**UNITED STATES of America**

v.

**John BUTLER, Appellant.**

**No. 73–1891.**

United States Court of Appeals, District of Columbia Circuit.

Aug. 30, 1974.

Conviction vacated, case remanded for a new trial.

Roger W. Langsdorf, Washington, D. C. (appointed by this court), for appellant.

Harold H. Titus, U. S. Atty. at the time the record was filed, John A. Terry and Julius A. Johnson, Asst. U. S. Attys., for appellee.

Before BAZELON, Chief Judge, and WILKEY, Circuit Judge.

PER CURIAM:

After a bizarre set of procedural circumstances, both in the Court of Appeals and the District Court, this case is now before us subsequent to our order to show cause why the conviction of the appellant Butler should not be vacated for ineffective assistance of trial counsel. A review of the actions at both the trial and appellate levels leaves us no choice but to vacate the conviction and remand for a new trial.

Since our decision does not turn directly upon the facts of the substantive offense, except in relation to the actions of trial counsel, the usual details of the tawdry narcotics traffic will be abbreviated.[1]

Appellant John Butler was found guilty of possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a) (1970).[2] On 10 October 1972 he was sentenced to a term of three to nine years' imprisonment.[3] A timely notice of appeal from the conviction was filed in this court,[4] briefs were received, and oral argument was heard. Before reaching a decision on the merits, we were informed by appellant's counsel on appeal that appellant's trial counsel was not a member of the bar of the District of Columbia. Accordingly, on 23 May 1973, we remanded the appeals of appellant and his codefendant for the District Court to give "appropriate consideration to the situation resulting from this improper representation of the appellant Butler."

A hearing was held on remand "to determine whether or not Mr. Butler was properly represented in spite of [his trial counsel's] not being formally admitted to the Bar of this Court."[5] Testimony indicated that trial counsel had lied to his professional colleagues concerning his membership to the bar; other specific observations related directly to counsel's actions in this case. By order entered 31 July 1973, denying the motion for a new trial,[6] the District Court found "of no consequence" the fact that trial counsel was not a member

---

1. Aside from appellant Butler's testimony in his own defense, the bulk of the evidence at trial dealt with the actions of his supposed confederates.

2. "(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
   "(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
   "(2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance."

3. By order entered 4 December 1972 the judgment and commitment was amended by an additional "special parole term of three (3) years pursuant to the provisions of 21 U.S.C. 841(b)(1)(A)," thus increasing the total sentence to a maximum of twelve years.

4. Appellant's direct appeal from his conviction was filed in this court under Docket No. 72–2039, 156 U.S.App.D.C. 200, 479 F. 2d 921.

5. R.H. 3. Citations to the record hereafter will be indicated as follows: "Tr." refers to the transcript of trial proceedings on 20, 21, and 22 June 1972; "R.H." refers to the hearing on remand held 27 June 1973.

6. On appellant's motion, the trial judge, prior to the hearing on remand, ordered that trial counsel be examined by a psychiatrist of the Office of Forensic Psychiatry. Pursuant to this order, a psychiatrist, without the benefit of any background information about counsel, examined him for a total of one hour and twenty minutes. R.H. 14. We fully agree with the trial judge's refusal to rely on the psychiatrist's evaluation in considering the issue of ineffectiveness of counsel. The grounds upon which we rely in finding that appellant was denied effective assistance are set forth in Part II of this opinion, *infra*.

of the bar of the District of Columbia, and that the representation had been "adequate." Butler then appealed the 31 July order.[7]

Inasmuch as our consideration of the merits of Butler's direct appeal was aborted when we learned of the ineffective assistance of counsel issue, we now have before us the direct appeal issues as well as the issues raised on appeal from the remand proceeding. The latter were embraced in our order to show cause.

## I. FACTS

Appellant Butler was convicted after a trial at which only one witness for the Government implicated him in the crime. Edward Whiteside, appellant's nephew, testified that Butler, his uncle, had sent him from Greenville, South Carolina, to the District of Columbia to purchase narcotics from codefendant Lucas. Whiteside testified that he had heard Butler making the arrangements by telephone from his (Butler's) mother's house in Greenville in the first week of June. He also testified that when he purchased the narcotics Lucas had said to him, "tell John to put a five on it," [8] that is, tell the appellant to "cut" the heroin or dilute it with other substances. Whiteside testified he had been given eight hundred dollars by the appellant to purchase the narcotics, and that a friend of Lucas' had made airplane reservations for Whiteside to return to South Carolina with the drugs.

This testimony of the one witness was the sole testimony implicating appellant Butler, either by name or description. Other testimony squarely implicated codefendant Lucas and Whiteside, the courier who was arrested with the narcotics in his actual possession.

Appellant called three witnesses and took the stand himself to rebut Whiteside's testimony. Appellant's mother, his wife, and a friend testified that they had not seen Whiteside in Greenville during the time he claimed to have heard Butler make telephone arrangements for the purchase of narcotics. All three witnesses also testified that when they had gone to the jail to visit Butler, Whiteside, who was in a nearby cell, said that he intended to implicate Butler, implying that it was because Butler had not helped him raise money for a release bond. Butler himself denied having seen or spoken with Whiteside in Greenville or having any knowledge of the purchase of narcotics from Lucas.

## II. APPELLANT'S CONTENTIONS ON APPEAL

Appellant contends that the trial court erred in excluding from evidence the transcript of a prior sworn inconsistent statement by the sole Government witness against Butler, Edward Whiteside. The trial court also denied defense requests for the identity of a police informer and for allegedly misleading jury instructions on aiding and abetting. As a separate ground for reversal, appellant challenges the admission into evidence of hearsay statements by the unidentified informant and appellant's codefendant, who did not testify at the trial, which were used to corroborate the testimony of the Government's principal and only direct witness against appellant.

Appellant particularly complains of the admission into evidence of a police search of appellant's apartment for narcotics pursuant to a warrant, approximately two months before the alleged crime, as highly prejudicial and constituting reversible error. This was the only evidence, aside from Whiteside's assertions, which linked appellant to narcotics in any way. Coming from police authorities, such testimony was no doubt damaging.

Finally, it is argued that the record at trial and at the subsequent remand hearing reveals that Butler was denied effec-

---

7. The appeal from the remand hearing was filed in this court under Docket No. 73-1891.

8. Tr. 156.

tive assistance of counsel. Because we find this last argument dispositive of the appeal before us, we do not reach the other issues, many of which are nevertheless substantial.

■■ This court has recently reconsidered the standards to be applied to claims of ineffective assistance of counsel which are made on direct appeal. We held in United States v. De Coster [9] that the right to effective assistance is violated when a defendant is denied "the reasonably competent assistance of an attorney acting as his diligent conscientious advocate." [10] In this case, appellant argues that trial counsel's nonmembership in the bar, his misrepresenta-

tions, and his conduct at trial constitute a sufficient base for finding that there was a denial of the right of effective counsel.[11] We agree.

■ Standing alone, the mere fact of a trial attorney's nonmembership in the local bar is not necessarily sufficient to find that the right to effective counsel was breached. While a defendant's right is violated when he is represented by a layman posing as a lawyer,[12] it has been held that the right is not violated when the sole prejudicial factor appears to be that counsel was not a member of the federal bar but was a member of the local bar and known by the judge to be well qualified.[13]

9. 159 U.S.App.D.C. 326, 487 F.2d 1197 (1973).

10. 159 U.S.App.D.C. at 331, 487 F.2d at 1202 (footnote omitted, emphasis in original).

11. Since Butler's trial occurred before our decision in De Coster, we must determine whether that decision has retrospective application.

Whether newly announced standards are to be given retroactive application is determined by a weighing of three factors: " 'a) the purpose to be served by the new standards, b) the extent of the reliance by law enforcement authorities on the old standards, and c) the effect on the administration of justice of a retroactive application of the new standards.' " Williams v. United States, 401 U.S. 646, 652–653, n. 5, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971), quoting Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). Applying this tripartite test to De Coster, we find retroactive application to be fully warranted.

To the extent that a newly announced standard has the purpose of reinforcing the fairness of trial proceedings, retroactive application is usually favored. See Linkletter v. Walker, 381 U.S. 618, 639, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). The newly announced De Coster standards have just such a purpose. Indeed, we indicated in De Coster that "[t]he effective assistance of counsel is a defendant's most fundamental right 'for it affects his ability to assert any other right he may have.' " 159 U.S.App.D.C. at 330, 487 F.2d at 1201, quoting Schaefer, Federalism and State Criminal Procedure, 70 Harv. L.Rev. 1, 8 (1956). Retroactive application of De Coster would serve the purpose of helping to insure that defendants have not been "left to the mercies of incompetent counsel." McMann v. Richardson, 397 U.S.

759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

Looking at the second factor to be weighed it is doubtful that there was a great deal of active reliance in the period prior to De Coster on the old "farce and mockery" standard of ineffectiveness. Jones v. Huff, 80 U.S.App.D.C. 254, 152 F.2d 14 (1945); Bruce v. United States, 126 U.S.App.D.C. 336, 379 F.2d 113 (1967). The validity of that standard had already been under serious question for several years. See United States v. De Coster, 159 U.S.App.D.C. at 330–331, 487 F.2d at 1201–1202.

Finally, retroactive application of the De Coster standards works virtually no burden on the administration of justice. De Coster is a ruling which addresses only the problem of "the correct standard to be applied when the question of ineffectiveness is raised on direct appeal." United States v. De Coster, 159 U.S.App.D.C. at 331, 487 F.2d at 1202 (emphasis supplied). Making it retroactive therefore does not run the risk of creating a deluge of collateral attack applications by defendants whose ineffectiveness claims have already been denied under the old standard.

12. Harrison v. United States, 123 U.S.App. D.C. 230, 359 F.2d 214 (1965).

13. Farr v. United States, 314 F.Supp. 1125, 1132 (W.D.Mo.1970), aff'd, 436 F.2d 975 (8th Cir. 1971), cert. denied, 402 U.S. 947, 91 S.Ct. 1639, 29 L.Ed.2d 116 (1971). In reversing a contempt conviction of an attorney who was not a member of the local bar and who, through court clerical error, represented a defendant without seeking leave of court, we said:

Appellant, as we have said, had qualified for practice in other courts of high standing. Participation in litigation—even criminal litigation—by non-members of the

In the case before us, however, we have the presence of several prejudicial considerations in addition to the mere formality of bar membership. First, counsel *misrepresented* his membership in the bar to the court, to his law firm partners, and to his clients. Secondly, although he conferred to some extent with co-counsel, the conduct of appellant's defense was principally in his hands, and he apparently had had no previous trial experience.[14]

Finally, and critically, the record of the trial itself reveals significant errors on the part of counsel. For instance, counsel failed to object to the introduction through police officers of hearsay statements made by the informant which tended to implicate Butler in the narcotics purchase. Nor did counsel object to references to those statements made during the course of the government's closing argument. Counsel failed to object to the introduction of Lucas' hearsay statement to which Whiteside, not Lucas, testified. Moreover, since Whiteside was the sole Government witness who testified directly about appellant's alleged participation in the crime, undermining his credibility was essential for the defense. Yet, although counsel had in his possession a transcript of Whiteside's testimony at the pretrial suppression hearing which conflicted in critical ways with that given at trial, counsel failed to use the transcript as a basis for a thorough cross-examination of Whiteside.

Because they may arguably be the product of tactical decisions as opposed to being the result of inadequate preparation, such errors might normally not be germane to an ineffectiveness claim.[15] However, they are highly relevant where, as here, other factors—such as counsel's nonmembership in the bar—independently raise the question of ineffectiveness.

On reviewing the facts of this case, we believe that appellant has demonstrated a substantial violation of the duties owed him by his counsel. Partly because the very ineffectiveness of the assistance may lead to prejudice not being reflected in the record, the burden at this point shifts to the Government to establish a lack of prejudice.[16]

## III. THE GOVERNMENT'S FAILURE TO ANSWER

Not only has the Government clearly failed to meet its burden in this case, it has not even attempted to carry it. The record demonstrates a repeated pattern of untimely motions to extend time for filing the Government's brief. On 30 April 1974 the *third* motion for extension of time in which to file the Government's brief was made. Two of these motions for additional time were themselves filed late. The grounds alleged were work on other cases and a long scheduled vacation by the Assistant U.S. Attorney responsible. The patience of the court being exhausted, the Government's third motion for extension of time was denied. As a result, this court has never received a brief from the Government answering the serious issues raised on appeal.[17]

---

local bar simply by obtaining leave of court is a common event in this and other courts. We have never felt that as a class these appearances are per se ineffective or obstructive; indeed, as we have pointed out, we permitted appellant to argue the application to this court for release [of his indigent client].

In re Brown, 147 U.S.App.D.C. 156, 161–162, 454 F.2d 999, 1004–1005 (1971) (footnotes omitted).

14. The psychiatrist who examined counsel testified that he indicated that he "doesn't like courtroom work" and that this "was the first case that he had actuall [sic] tried in a trial proceeding." R.H. 13.

15. *See* United States v. De Coster, 159 U.S. App.D.C. at 330, 487 F.2d at 1201. *See also* United States v. Hammonds, 138 U.S.App. D.C. 166, 425 F.2d 597, 601 (1970).

16. *See* United States v. De Coster, 159 U.S. App.D.C. at 333, 487 F.2d at 1204.

17. Not only did the court not receive a brief on the merits from the Government, but review of the trial *record* by this court was

These delays were singularly callous and inexcusable because the appellant had been incarcerated since 22 June 1972. We were not dealing in abstractions when we wrote in United States v. Stanley:

> Faced with the spectre of delay caused by the Government, it becomes increasingly hard for appellate judges in good conscience to deny release pending appeal when the United States Attorney's office is requesting one, two, and three extensions in filing its brief on the merits.[18]

On the same day we denied the Government's third request for an extension, we ordered appellant released on his own recognizance with conditions. The Government was further directed to show cause why the conviction of appellant should not be vacated for ineffective assistance of counsel. The response to that order, filed only after yet another extension of time was granted, is the only Government discussion of the issue on remand of ineffective assistance of counsel. It is inadequate.

We find that the appellant was denied his constitutional right to effective counsel in his behalf, vacate the judgment of conviction, and remand for a new trial.

So ordered.

delayed by the Government as well. On 10 September 1973 the original record on appeal was certified to this court by the District Court Clerk with the statement: "Exceptions: . . . Two (2) Transcripts filed 11-28-72, and One Transcript filed 12-61-72 [sic] which can not be located." The missing portions were the official verbatim transcript of appellant's trial and conviction.

After a further search had failed to uncover the missing transcripts, photocopies were borrowed from the U. S. Attorney's office for consideration by the court in determining appellant's motion for release on bail. These photocopies were returned thereafter. When the court came to consider the disposi-

tion of the order to show cause why the conviction should not be vacated for ineffective assistance of counsel, this court again instituted a search for the missing original transcripts. The results being fruitless, in the effort to borrow for a second time the U. S. Attorney's office photocopies, a Deputy Clerk of the Court of Appeals observed the missing original transcripts in the office files of the Assistant U. S. Attorney responsible for this case. Those missing originals were certified to this court 24 June 1974 and are now in the record before us.

18. 150 U.S.App.D.C. 301, 302, 464 F.2d 810, 811 (1972).