**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Barry J. HOFFMAN,**
**Defendant-Appellant.**

No. 82–5538.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 14, 1983.

Decided Feb. 14, 1984.

Rehearing and Rehearing En Banc
Denied May 17, 1984.

Robert P. Weidner, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Lynn M. Pearlstein, Phoenix, Ariz., for defendant-appellant.

Before WALLACE, TANG, and NELSON, Circuit Judges.

WALLACE, Circuit Judge:

Hoffman appeals from the district court's denial of his motion for relief pursuant to 28 U.S.C. § 2255. He contends that he was deprived of his sixth amendment right to effective assistance of counsel. We affirm.

I

Hoffman was indicted with 21 others in a drug conspiracy prosecution. He, along with others, was convicted of conspiracy to possess with intent to distribute narcotics and of using a communication facility to further a conspiracy. The trial in the United States District Court for the District of Arizona began on June 5, 1979 and ended on August 24, 1979. A motion for a new trial was denied on October 2, 1979. He was sentenced on October 15, 1979.

Vernell represented Hoffman in pretrial proceedings to remove Hoffman from Florida, at trial, and in the posttrial motion for a new trial. At the time trial began, Vernell was a member of the Florida State Bar and the bar of the United States District Court for the Southern District of Florida. He was permitted to represent Hoffman in the District of Arizona on the basis of his out-of-state bar membership.[1]

Effective July 16, 1979, which was during the trial, Vernell was suspended from the Florida State Bar for a period of six months. *Florida Bar v. Vernell*, 374 So.2d 473, 476 (Fla.1979) (per curiam). The bases for his suspension were misdemeanor convictions for failure to file income tax returns and conduct prejudicial to the administration of justice arising from his rec-

ommendation to two clients to plead guilty and later claim their plea was void because of his conflict of interest in the case. 374 So.2d at 474–76. On November 21, 1979, subsequent to Hoffman's sentencing, Vernell was suspended from practice before the District of Arizona. Vernell was reinstated as a member of the Florida State Bar on September 12, 1980.

On direct appeal, we affirmed the convictions of the seven remaining defendants, including Hoffman, in an unpublished decision but declined to decide Hoffman's ineffective assistance of counsel claim. Hoffman then filed for section 2255 relief. After an evidentiary hearing on Hoffman's allegation that he was denied the effective assistance of counsel, the district court denied relief. Hoffman again appeals.

II

▬ Under the sixth amendment, Hoffman was entitled to the assistance of counsel unless he knowingly, intelligently, and voluntarily waived his right to counsel. Hoffman makes three arguments in support of his claim that he was denied his right to counsel.[2]

A.

First, Hoffman argues that Vernell was not "counsel" within the meaning of the sixth amendment. As a corollary to this argument, Hoffman asserts that the judge who presided at his trial would have been obligated to suspend Vernell immediately if he had been aware that Vernell had been suspended from the Florida State Bar.

The local rules for the District of Arizona require an attorney subjected to disciplinary action by the bar of another jurisdic-

---

1. It is unclear from the record whether Vernell was admitted to the bar of the District Court of Arizona or admitted only for the Hoffman case. Our disposition would be the same in either instance.

2. The government contends that Hoffman waived his right to counsel. The government's waiver argument rests upon a statement by the trial judge in his testimony at the evidentiary

hearing on the section 2255 petition that he thought Hoffman knew that Vernell had been suspended from the Florida State Bar. The government's support for a finding of waiver of the right to counsel falls far short of meeting the knowing, intelligent, and voluntary standard for waiver of a constitutional right. *See Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

tion to report the matter to the court. D.Ariz.R. 7(b). The rules also provide that:

> Where it is known to the court that any member of its bar has been suspended or disbarred from practice by any court of competent jurisdiction, that fact will be sufficient ground for his removal or suspension by this court, and he will be forthwith suspended from practice before this court, and unless, upon notice mailed to him at the address shown in the clerk's records, he shows good cause to the contrary within forty (40) days, he will be disbarred.

*Id.* 7(c).

Despite the mandatory nature of the language of rule 7(c), the Supreme Court has held that an attorney disbarred from a state bar association may not be summarily disbarred from practice before a federal court even if the state bar membership was the predicate upon which the lawyer was admitted to the federal court. In *Theard v. United States,* 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957), the Court reversed a decision striking an attorney from a federal district court's roll of attorneys. The district court rules provided, as in the case before us, that an attorney disbarred from another jurisdiction "will be forthwith suspended." *Id.* at 281–82, 77 S.Ct. at 1276. Nevertheless, the Court concluded that "[w]hile a lawyer is admitted into a federal court by way of state court, he is not automatically sent out of the federal court by the same route." *Id.* at 281, 77 S.Ct. at 1276. Subsequently, in *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117, *modified,* 392 U.S. 919, 88 S.Ct. 2257, 20 L.Ed.2d 1380 (1968) (omitting taxation of costs), the Court reaffirmed its decision that a state disbarment is not conclusively binding on a federal court and that an attorney facing disbarment from a federal court is entitled to procedural due process.

Therefore, we are confronted with the issue whether representation by an attorney suspended from his home state bar association during trial, but not suspended from practice before the federal district court until after trial, qualifies as represen-

tation by counsel within the sixth amendment. Before addressing that issue, however, we wish to make it clear that we in no way condone Vernell's failure to inform the court of his Florida suspension. Any discipline for that act would occur in a separate proceeding. We are confronted here only with Hoffman's sixth amendment claim and not consideration of the proper sanctions to be imposed on Vernell.

■ We start from the premise that the sixth amendment guarantee of counsel means representation by an attorney admitted to practice law. *Solina v. United States,* 709 F.2d 160, 166–67 (2d Cir.1983); *United States v. Wilhelm,* 570 F.2d 461, 464–65 (3d Cir.1978); *United States v. Irwin,* 561 F.2d 198, 200 (10th Cir.1977), *cert. denied,* 434 U.S. 1012, 98 S.Ct. 725, 54 L.Ed.2d 755 (1978); *Achtien v. Dowd,* 117 F.2d 989, 992 (7th Cir.1941); *Turner v. American Bar Association,* 407 F.Supp. 451 (W.D.Wis.1975), *aff'd sub nom. Taylor v. Montgomery,* 539 F.2d 715 (7th Cir.1976) (without opinion) & *Pilla v. American Bar Association,* 542 F.2d 56 (8th Cir.1976); *see United States v. Wright,* 568 F.2d 142, 142–43 (9th Cir.1978); *United States v. Kelley,* 539 F.2d 1199, 1203 (9th Cir.), *cert. denied,* 429 U.S. 963, 97 S.Ct. 393, 50 L.Ed.2d 332 (1976). *But see United States v. Whitesel,* 543 F.2d 1176 (6th Cir.1976), *cert. denied,* 431 U.S. 967, 97 S.Ct. 2924, 53 L.Ed.2d 1062 (1977). The question before us is whether suspension from practice before the predicate state bar automatically results in a lack of representation by counsel as guaranteed by the sixth amendment. Hoffman cites no precedent that convinces us that a per se rule is warranted and we refuse to establish one on the facts of this case.

■ In the related situation where a defendant was unknowingly represented by a person posing as a lawyer, but who had never been admitted to membership in any bar, several courts have applied a per se rule and found that the right to counsel was violated. *E.g., Solina v. United States,* 709 F.2d at 168 (graduate of accredited law school who had failed New York

bar examination twice and had not been admitted to any other bar); *Harrison v. United States*, 387 F.2d 203, 212–14 (D.C. Cir.1967) (reversing one defendant's conviction because the government used the defendant's statements elicited during earlier trial when the defendant was represented by ex-convict posing as a lawyer), *rev'd on other grounds*, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); *Huckelbury v. State*, 337 So.2d 400 (Fla.Dist.Ct.App.1976) (law school graduate who had been refused admittance to the Florida State Bar for failure to meet standards of character and not a member of any other bar); *People v. Felder*, 47 N.Y.2d 287, 391 N.E.2d 1274, 418 N.Y.S.2d 295 (1979) (never a member of any bar and not a law school graduate; but refusing to extend per se rule to representation by person who has been disbarred or who is licensed in another jurisdiction); *see also People v. Cox*, 12 Ill.2d 265, 146 N.E.2d 19 (1957).

Those cases differ from this, a suspension case. Vernell was a duly licensed Florida lawyer at the start of Hoffman's trial and was not suspended from practice before the District of Arizona until after the trial's completion, after the motion for a new trial was ruled upon, and after sentencing. The record shows that Vernell subsequently was reinstated to the Florida State Bar. Thus, we are confronted with representation by an attorney suspended for a set term from his home state bar during a federal district court trial, and not, as in the cases cited above, representation by a person never qualified to practice law in any jurisdiction. Notably, the Second Circuit took care to expressly limit its holding in *Solina v. United States*, stating that:

> [W]e do not intimate that any technical defect in the licensed status of a defendant's representative would amount to a violation of the Sixth Amendment. We limit our decision in this case to situations where, unbeknown to the defendant, his representative was not authorized to practice law in any state, and the lack of such authorization stemmed from failure to seek it or from its denial for a

reason going to legal ability, such as failure to pass a bar examination, or want of moral character[.]

709 F.2d at 167 (footnote and citation omitted).

In contrast to the cases finding a sixth amendment violation because the defendant's representative had never been admitted to any bar, other courts will not find a per se violation of the Constitution where there is a defect in counsel's bar status. For example, in *United States v. Bradford*, 238 F.2d 395 (2d Cir.1956), *cert. denied*, 352 U.S. 1002, 77 S.Ct. 558, 1 L.Ed.2d 546 (1957) & 356 U.S. 927 (1958), the Second Circuit declined to follow a per se rule and held that the defendant's right to counsel was not violated because he was represented in federal district court in New York by a member of the New York State Bar who had failed to make a formal application for admission to practice before the federal court or to obtain leave to represent the defendant. *Accord Derringer v. United States*, 441 F.2d 1140 (8th Cir.1971) (per curiam); *People v. Cornwall*, 3 Ill.App.3d 943, 277 N.E.2d 766 (1971); *State v. Deruy*, 143 Kan. 590, 56 P.2d 57 (1936). In *Wilson v. People*, —— Colo. ——, 652 P.2d 595 (1982), *cert. denied*, 459 U.S. 1218, 103 S.Ct. 1221, 75 L.Ed.2d 457 (1983), the Supreme Court of Colorado held that a defendant represented at trial by a person who was graduated from an accredited law school and had passed the Colorado bar examination, but who had not yet taken the oath for bar admission was not per se denied effective assistance of counsel. In *Johnson v. State*, 225 Kan. 458, 590 P.2d 1082 (1979), the Supreme Court of Kansas held that a defendant represented by an attorney who was in suspended status for failure to pay required attorney registration fees was not per se denied the right to counsel. *See also, e.g., United States v. Butler*, 504 F.2d 220, 223–24 (D.C.Cir.1974) (per curiam) (finding ineffective assistance of counsel because of "several prejudicial considerations in addition to the mere formality of bar membership"); *People v. Brewer*, 88 Mich.App. 756, 279 N.W.2d 307

(1979) (refusing to apply per se rule because defendant's attorney was suspended for failure to pay dues).

A decision by the Seventh Circuit also lends support to our conclusion that these facts do not support the application of a per se rule. In *United States v. Merritt*, 528 F.2d 650 (7th Cir.1976) (per curiam), the court considered whether a defendant had been denied effective assistance of counsel because he was represented in a trial in a federal district court in Indiana by counsel who had passed the Iowa bar examination but who had failed the Indiana examination three times. The representative was ineligible to retake the Indiana examination until he completed another year of legal studies. The court reversed the conviction and remanded for a new trial on the following basis:

> The bar examination failures and the inexperience of appointed counsel create an appearance of inadequate representation that is compounded by the cumulative effect of several incidents which provide reasonable grounds for questioning counsel's professional judgment and skill. Standing alone none of these incidents would lead us to conclude that counsel had not met "a minimum standard of professional representation."

*Id.* at 651 (citation omitted). We read the Seventh Circuit's opinion as refusing to apply a per se rule. *Cf. Solina v. United States*, 709 F.2d at 168.

Hoffman especially relies on *McKinzie v. Ellis*, 287 F.2d 549 (5th Cir.1961), to support his argument for a per se rule. In that case, the Fifth Circuit held that representation by an attorney who had been dropped from the state bar because of failure to pay required dues violated the Constitution, as well as a state statute, because the attorney was not a "practicing" attorney. The case might help Hoffman except that in *Beto v. Barfield*, 391 F.2d 275 (5th Cir.) (per curiam), *cert. denied*, 393 U.S. 888, 89 S.Ct. 205, 21 L.Ed.2d 166 (1968), the Fifth Circuit repudiated its previous decision because of a change in the interpretation of applicable state law. *See Hill v. State*, 393 S.W.2d 901 (Tex.Cr.App.1965).

In addition, Hoffman relies upon dicta in *United States v. Stockheimer*, 385 F.Supp. 979 (W.D.Wis.1974), *aff'd without published opinion*, 534 F.2d 331 (7th Cir.), *cert. denied*, 429 U.S. 966, 97 S.Ct. 397, 50 L.Ed.2d 335 (1976), to support his argument for a per se rule. In response to Stockheimer's request for a specific person, the district court held that disbarred attorneys were not counsel within the sixth amendment and that there was no sixth amendment right to the assistance of a lay person. The case also is distinguishable because the district court found that the defendant waived his right to counsel. *See United States v. Conrad*, 598 F.2d 506, 510 (9th Cir.1979).

### B.

Hoffman also argues that he was denied effective assistance of counsel because Vernell had a conflict of interest. Hoffman asserts that Vernell's failure to notify the District of Arizona judge of his Florida suspension placed Vernell in conflict with Hoffman. Hoffman does not argue that the trial judge was obligated to initiate an inquiry into the alleged conflict and we do not reach that issue.

The Supreme Court set forth the standard to be employed in determining when a lawyer's conflict of interest violates his client's sixth amendment right to counsel in *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (*Cuyler*). The Court held that "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348, 100 S.Ct. at 1718. A defendant need not demonstrate prejudice, but he must demonstrate "that his counsel actively represented conflicting interests." *Id.* at 349–50, 100 S.Ct. at 1719.

Although *Cuyler* addresses conflicts of interest in the context of multiple representation, we agree with Hoffman

that the *Cuyler* standard is applicable to the case before us. *See Brown v. United States,* 665 F.2d 271 (9th Cir.1982); *United States v. Hearst,* 638 F.2d 1190, 1193–94 (9th Cir.1980), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2018, 68 L.Ed.2d 325 (1981). We do not agree with Hoffman, however, that he has proven the *Cuyler* requirements.

Hoffman is not assisted by the Second Circuit's statement, in deciding that representation without the defendant's knowledge by a person posing as an attorney but who has never been a member of any bar violated the sixth amendment, that:

> The problem of representation by a person like Coleman is not simply one of competence ... but that he was engaging in a crime. Such a person cannot be wholly free from fear of what might happen if a vigorous defense should lead the prosecutor or the trial judge to inquire into his background and discover his lack of credentials. Yet a criminal defendant is entitled to be represented by someone free from such constraints.

*Solina v. United States,* 709 F.2d at 164 (footnote omitted). As we discussed earlier, representation by a person posing as a lawyer is substantially different from the case before us. Even though Vernell was suspended from practice in the State of Florida and was in violation of the rule requiring him to report his suspension to the judge in the District of Arizona, he was not suspended from practice in the District of Arizona until after Hoffman's trial. Contrary to Hoffman's assertion, Vernell was not subject to automatic suspension in the District of Arizona. *Theard v. United States,* 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957). Despite the impropriety of Vernell's failure to inform the court, as a matter of law we conclude that Hoffman was not denied his right to counsel because of a conflict of interest.

Significantly, Vernell's alleged conflict did not place him in an adversarial position relative to Hoffman. At best, Hoffman has shown only a remote possibility of a conflict and not an actual conflict that adversely affected Vernell's performance. There is no showing that Vernell actively represented conflicting interests.

The case before us is fundamentally different from *Messelt v. Alabama,* 595 F.2d 247 (5th Cir.1979) (per curiam), upon which Hoffman relies. There, the attorney took affirmative action directly contrary to his client's interests. The attorney suggested to the prosecutor that the charges pending against his client be dismissed and that the client be reindicted on more serious charges. The attorney took this action in order to increase his leverage to collect his fee. Further, the attorney proposed to the client that he participate in the attorney's drug scheme in lieu of paying the fee. Ultimately, the client became an undercover agent, an informant, and a witness against the attorney. The Fifth Circuit held that the client's convictions were fundamentally unfair and violated his due process right to a fair trial.

### C.

Finally, Hoffman argues that he was denied effective assistance of counsel under the standard we enunciated in *Cooper v. Fitzharris,* 586 F.2d 1325 (9th Cir.1978) (en banc), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979) (*Cooper*). He bases this argument on the cumulative impact of the following alleged deficiencies in Vernell's representation: poor preparation for trial, failure to file motions timely, incompetent examination of witnesses, inability to introduce evidence, and an antagonistic attitude toward the trial judge. The district court held that Vernell's defense of Hoffman did not fall below the standard of practice expected of a reasonably competent criminal defense attorney and that Hoffman failed to establish that he was prejudiced by anything Vernell did in his defense. Both sides assert that we should apply the clearly erroneous standard of review to these determinations by the district court. *See Satchell v. Cardwell,* 653 F.2d 408, 413–14 (9th Cir.1981), *cert. denied,* 454 U.S. 1154, 102 S.Ct. 1026, 71 L.Ed.2d 311 (1982); *Ewing v. Williams,* 596 F.2d 391 (9th Cir.1979).

■ Under *Cooper*, Hoffman first must establish that Vernell's errors or omissions "reflect a failure to exercise the skill, judgment, or diligence of a reasonably competent criminal defense attorney—they must be errors a reasonably competent attorney acting as a diligent conscientious advocate would not have made . . . ." 586 F.2d at 1330. Second, Hoffman must establish that he was prejudiced by Vernell's errors or omissions. *Id.* at 1331–34; *see also United States v. Tucker*, 716 F.2d 576 (9th Cir.1983).

■ Although Vernell's representation of Hoffman was certainly not flawless, the district judge was not clearly erroneous in concluding that it met the standard of practice expected of a reasonably competent criminal defense attorney. Hoffman relies upon the testimony of lawyers for his codefendants to support his contention that Vernell's representation fell below the required standard of competence. The district judge considered this testimony, in addition to that of another attorney who testified that Vernell's defense of Hoffman was competent, and concluded that Vernell met the standard of competency. Vernell vigorously represented Hoffman in the pretrial proceedings to remove Hoffman from Florida to Arizona, made numerous motions before and during trial, made objections at trial, some of which were sustained, and attempted to establish the defense of misidentification. He also moved for a new trial.

To attack successfully his conviction under the sixth amendment, *Cooper* requires he prove both that he was denied effective assistance of counsel and that he was prejudiced thereby. Because Hoffman failed to show incompetent acts under the first prong of the *Cooper* test, we need not discuss the prejudice requirement.

AFFIRMED.

1. Several circuits do apply a per se rule that unlicensed attorneys are ineffective counsel. *E.g., Solina v. United States*, 709 F.2d 160 (2d Cir.1983). Like the majority, I see a distinction between a lawyer who has never been licensed and a lawyer who has been suspended in one state but has not yet been suspended in a second

NELSON, Circuit Judge, dissenting:

A lawyer is admitted to practice before an Arizona federal court *solely* because he is licensed to practice in Florida. When that lawyer loses his license in Florida, may the Arizona court absolutely ignore Florida's decision? The majority says it may.

I respectfully dissent.

Hoffman argues that a lawyer who has lost his only earned license to practice law should, per se, be deemed ineffective counsel in all jurisdictions that predicate permission to practice on that license. Like the majority, I reject this position.[1] Although disbarment in one state is relevant to other jurisdictions, *Theard v. United States*, 354 U.S. 278, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957), I am not convinced that it should be binding on those jurisdictions. Unlike the majority, however, my rejection of a per se rule does not mean that disbarment can be ignored.

In rejecting the per se rule, the majority relies heavily on *United States v. Merritt*, 528 F.2d 650 (7th Cir.1976) (per curiam). There, as here, an unlicensed attorney represented a criminal defendant in court. There, as here, the trial court reviewed the record, concluded "that counsel's performance had been competent and denied relief." *Id.* at 651. But there, unlike the majority here, the appellate court concluded that the lawyer's dubious professional status "create[d] an appearance of inadequate representation" and reversed for a new trial. *Id.*

If the trial court found counsel adequate in the *Merritt* case, and the Seventh Circuit reversed without disturbing this finding, the lesson of that case is clear: although unlicensed attorneys are not per se ineffective counsel, there is a heavy presumption

state. Unlike the majority, I would not equate a state bar's reasoned determination that a person is unfit to practice law with a mere "technical defect" in licensing. *Ante* at 600, *citing Solina v. United States*, 709 F.2d at 167.

of ineffectiveness that must be overcome. The majority relies on *Merritt* for the first half of this lesson, but ignores the second completely. I would prefer to cite the case for its entire holding.

At an intuitive level, it seems obvious to me that an attorney's suspension reflects on his effectiveness as counsel. After all, in the state in which he has been suspended, the attorney is conclusively presumed ineffective for the period of suspension.[2]

At an ethical level, the judicial system must avoid even the appearance of impropriety. Model Code of Professional Responsibility EC 9-6. To uphold a verdict that rests on the performance of a lawyer who, had the facts been known, would not have been allowed into the district court,[3] is to give the appearance that the judicial system has failed. I would take care to avoid such an appearance of impropriety.

At a legal level, every court to address this issue has concluded that unlicensed lawyers are suspect. *United States v. Merritt*, 528 F.2d 650 (7th Cir.1976) (per curiam); *United States v. Butler*, 504 F.2d 220 (D.C.Cir.1974). If not bound by the precedent of these courts, I am convinced by their logic. I would hold that lawyers who have lost the license that was the explicit predicate for granting them permission to practice before a second court are presumptively ineffective. Thus, I would remand for reconsideration in this light.

The only disturbing question that remains is why the majority stretches to apply the *Cooper* standard to the case before us. *See Cooper v. Fitzharris*, 586 F.2d 1325 (9th Cir.1978) (en banc), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979). *Cooper* applies the harmless error rule to allegations that unprepared or incompetent counsel violated a defendant's sixth amendment rights.[4] Such allegations can be made at every criminal appeal, are difficult to assess, and lack an objective basis. To restrain a potential avalanche of ineffective counsel claims, we apply a deferential standard of review and often view such claims skeptically. *E.g., Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Ewing v. Williams*, 596 F.2d 391 (9th Cir.1979).

Here, we have no such concerns. Hoffman points to the undeniable fact that the

---

**2.** Some might argue that Vernell, although found unfit to practice law, was not specifically found "incompetent" by the Florida State Bar. Rather, he was suspended for "ethical" reasons. *Florida Bar v. Vernell*, 374 So.2d 473 (Fla.1979) (per curiam).

As a matter of "competence," lawyers must understand their "ethical" duties. Thus 24 states now require successful completion of the Multistate Professional Responsibility Examination as a requirement for licensure.

As a matter of "ethics," lawyers owe their clients a duty of "competence." Model Code of Professional Responsibility DR 6-101, EC 6-3, EC 6-4. Wisely, the majority does not rest its decision on any supposed distinction between suspension for reasons of ethics rather than competence.

**3.** Although, as the majority notes, the district court would not have been legally compelled to suspend Vernell upon notice of Florida's action, the briefs make clear that the court would voluntarily have chosen to do so. What little Supreme Court guidance is available suggests that this decision would often be proper. *See Theard v. United States*, 354 U.S. 278, 282, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957) ("If the accusation rests on disbarment by a state court, such determination of course brings title deeds of high respect.").

**4.** As a general rule, courts are wary of applying the harmless error rule to denials of effective counsel. The doctrine has been rejected in many circumstances. *See, e.g., Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (lower court failed to determine if joint representation gave appellant's trial counsel the conflicting interest); *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) (co-defendants with conflicting interests improperly required to accept joint representation); *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976) (defendant improperly barred from consulting with counsel during overnight trial recess); *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975) (defense counsel improperly denied closing argument); *Chapman v. California*, 386 U.S. 18, 23 & n. 8, 87 S.Ct. 824, 827-28 & n. 8, 17 L.Ed.2d 705 (1976) (the right to counsel described as one of those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error"); *Hamilton v. Alabama*, 368 U.S. 52, 55, 82 S.Ct. 157, 159, 7 L.Ed.2d 114 (1961) (absence of counsel at arraignment).

Florida State Bar found Vernell unfit to practice, and suspended his license for six months as punishment. The potential trickle of ineffective counsel claims under these circumstances poses no administrative threat; any such claims would have an objective basis and be simple to assess. Thus, I believe that the majority's reliance on the *Cooper* standard is misplaced.

Official loss of license is a serious sanction, disturbing both to the legal profession and to society as a whole. Unwilling to treat this sanction as lightly as the majority, I would reverse.