## COMMONWEALTH vs. JAMES THIBEAULT.

No. 90-P-129.

Middlesex. May 24, 1990. - July 6, 1990.

Present: SMITH, KAPLAN, & FINE, JJ.

*Constitutional Law*, Assistance of counsel. *Practice, Criminal*, Assistance of counsel, New trial. *Attorney at Law*, Suspension.

Discussion of the limits of the "per se" rule, that entitles a person convicted of a crime to have the conviction set aside if he or she unknowingly has been represented by a lay person pretending to be an attorney. [789-792]

A criminal defendant was not entitled to have his conviction set aside by reason of his trial attorney's having represented him through trial and sentencing while under an order of suspension from practice. [792-793]

A criminal defendant who unknowingly was represented through trial and sentencing by an attorney then under an order of suspension from practice did not demonstrate that he had been deprived of effective assistance of counsel. [793-794]

INDICTMENT found and returned in the Superior Court Department on August 27, 1987.

A motion for a new trial, filed on October 2, 1989, was heard by *John Paul Sullivan, J.*

*Michael F. Natola* for the defendant.

*Pamela L. Hunt*, Assistant District Attorney, for the Commonwealth.

KAPLAN, J. This appeal involves ultimately a claim by the defendant-appellant Thibeault that he was deprived of effective assistance of counsel by reason of the fact that his trial attorney was under an order of suspension from practice during the period when he represented him at trial and sentencing.

The narrative begins with the indictment of Thibeault on August 27, 1987, on charges of trafficking in cocaine in an amount in excess of 28 grams, and possessing marihuana

with intent to distribute.[1] He was arraigned on October 1, 1987, and tried, jury-waived, on January 3, 1989. The judge found Thibeault guilty of the lesser included offense of possessing cocaine with intent to distribute, and of the like offense with respect to marihuana, the latter conviction being placed on file with the defendant's consent. On January 19, 1989, the judge sentenced Thibeault to six to ten years imprisonment at M.C.I., Cedar Junction, sentence suspended for three years with conditions that he undergo periodic drug examinations and remain substance free. From the time of arraignment onward, Thibeault was represented by an attorney, Richard B. Modica.

For probation violations, Thibeault was surrendered, and on September 6, 1989, now represented by new counsel, he was brought before the judge who had presided at the trial. After hearing, the judge, finding violations, imposed the original sentence. However, on October 2, 1989, counsel filed a motion for a new trial, which, as supplemented,[2] stated that Modica had been suspended from law practice for two years by order of a single justice of the Supreme Judicial Court entered December 29, 1988,[3] and was under suspension during Thibeault's trial and sentencing. This, itself, according to the motion, should be held to have deprived Thibeault of the

---

[1]There was a third charge of possession of cocaine with intent to distribute. It was dismissed on motion of the Commonwealth.

[2]There was a new trial motion, which was denied, and a second, somewhat elaborated motion, also denied, and Thibeault noticed an appeal only from the former denial. The Commonwealth belabors the failure to notice an appeal from the second denial, but the point is trivial. By the second "denial" the judge was saying in effect that the second version of the motion added nothing to the first that might call for a different result.

[3]The Commonwealth contends upon its reading of S.J.C. Rule 4:01, § 17(4), 365 Mass. 711 (1974), that Modica's suspension did not become effective until after Thibeault was sentenced, but this is to misread the order of the single justice. Taking December 29 as the date of the suspension, Thibeault's trial and sentencing occurred within the next 28 days, the period Modica was allowed by the single justice to wind up his affairs. Participation at trial and sentencing, particularly when the client is not informed of the suspension, hardly looks like the winding up contemplated.

The Commonwealth also speculates that Modica may not have learned of his suspension until after Thibeault's trial and sentencing, but this appears improbable; we assume the contrary.

"assistance of counsel" guaranteed by the Sixth Amendment. In addition, there was a claim that Modica's actual representation of Thibeault at pretrial and trial stages was constitutionally inadequate.

Modica was suspended from practice because he had been convicted of the crime of receiving stolen property (computer equipment taken from a local school), for which he was sentenced to one year's unsupervised probation.[4] The record hints at some extenuating circumstances, but the Board of Bar Overseers declined to consider them and took the conviction at face value, and the single justice accepted the board's recommendation of two years' suspension.

To return to the new-trial motion in Thibeault's case, the judge held that the fact Modica was under suspension while representing Thibeault (and failed to inform his client or the trial court) did not, of itself, compel a finding of ineffective assistance.

Going on to the claim that Modica's actual conduct of Thibeault's case was seriously flawed, the judge said, to the contrary, on the basis of his own recollection, that Modica had been "very effective" in securing the reduction of the trafficking charge, and, again, "must have been extremely forceful" to gain for Thibeault the sentence that "let the defendant walk on probation."

Thus the judge denied Thibeault a new trial; and it is from the order of denial that Thibeault takes the present appeal.

1. *Per se rule inapplicable.* It is now accepted that a person convicted of crime who has unknowingly been represented in the matter by an imposter — one pretending to be an attorney but in fact never licensed to practice anywhere — is entitled to have his or her conviction set aside, even though the representation was without a fault and as proficient as could be expected from the best of lawyers. This "per se" rule was acknowledged in *Commonwealth* v. *Thomas*, 399 Mass. 165, 168 (1987), and see, e.g., *Harrison* v. *United States*, 387 F.2d 203, 212-213 (D.C. Cir. 1967),

---

[4]Modica's appeal from his conviction is reported as *Commonwealth* v. *Modica*, 24 Mass. App. Ct. 334 (1987).

rev'd on other grounds, 392 U.S. 219 (1968); *United States v. Hoffman*, 733 F.2d 596, 599-600 (9th Cir.) (2-1 decision), cert. denied, 469 U.S. 1039 (1984); *People v. Felder*, 47 N.Y.2d 287, 291 (1979).

Judge Friendly in *Solina* v. *United States*, 709 F.2d 160 (2d Cir. 1983), provides an exegesis for the rule.[5] Early usages show that the Sixth Amendment, where it speaks of "assistance of counsel," refers to licensed practitioners. Then in *Johnson* v. *Zerbst*, 304 U.S. 458, 467 (1938), compliance with the assistance of counsel clause was said to be "an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty" and denial of assistance "a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty" (at 468) cognizable on habeas corpus.

Such is the background of the per se rule for imposters, but the result does not go down easily. Judge Friendly calls the invocation of "jurisdiction" a "somewhat surprising thesis": he adds that, had the Justices foreseen the extension of the writ, they might have reconsidered. And "[t]he conclusion," Judge Friendly writes, "that we must reverse the denial of the motion to vacate Solina's conviction is one that we have reached without enthusiasm on the facts here" (the facts showed overwhelming evidence of guilt and solid representation by the layman). 709 F.2d at 169. So the *Solina* opinion takes care to stress its own limits:

> "In so construing the original understanding of the term 'counsel' we do not intimate that any technical defect in the licensed status of a defendant's representative would amount to a violation of the Sixth Amendment. We limit our decision in this case to situations where, unbeknown to the defendant, his representative was not authorized to practice law in any state, and the

---

[5]In *Solina*, the person pretending to be an attorney had been graduated from an accredited law school and had passed one part of the New York bar examination but had twice failed the other part. He had had some experience in arbitrations and the like.

lack of such authorization stemmed from failure to seek it or from its denial for a reason going to legal ability, such as failure to pass a bar examination, or want of moral character, e.g., *Huckelbury* v. *State*, 337 So. 2d 400 (Fla. [Dist. Ct.] App. 1976)." *Id.* at 167, footnote omitted.[6]


A reading of the run of cases indicates that per se treatment has been pretty well confined as stated in *Solina*.[7] Thus there is no automatic vacation of convictions where licensed attorneys have represented the defendants while under disqualifications for one or another administrative reason, say failure to pay bar dues or omission to take the formal oath upon admission.[8] Here falls our *Thomas* case, where the attorney was suspended for failure to register with the Board of Bar Overseers. 399 Mass. at 168-169.[9] The same holds where attorneys licensed in a given jurisdiction have without

---

[6]In *Huckelbury*, the pretender had a law degree and had passed the Florida bar examination but was denied admission to the bar for testifying falsely before the board of bar examiners and for other misdeeds.

[7]Assimilated to the imposter cases, where the person has never been admitted to practice, are cases where the person has been admitted to the bar but only as a result of his or her fraudulent representations, so that the admission was tainted from the outset. See *People* v. *Williams*, 140 Misc. 2d 136 (N.Y. Sup. Ct. 1988); *People* v. *Chin Min Foo*, 144 Misc. 2d 589 (N.Y. Sup. Ct. 1989). But compare *Commonwealth* v. *Vance*, 376 Pa. Super. 493 (1988) (although admission to bar was procured by fraud, court refused to apply a per se rule for the formalistic reason that the person was on the rolls as an attorney when he acted as counsel at criminal trial).

[8]See *Wilson* v. *People*, 652 P.2d 595 (Colo. 1982), cert. denied, 459 U.S. 1218 (1983); *Johnson* v. *State*, 225 Kan. 458 (1979).

Other cases of administrative disqualification are cited in *Solina*, 709 F.2d at 167 n.9, and in *Thomas*, 399 Mass. at 168. See also *Jones* v. *State*, 747 S.W.2d 651 (Mo. Ct. App. 1988).

[9]Similarly, in *Commonwealth* v. *Tufts*, 405 Mass. 610, 617 n.6 (1989), the court, following the *Thomas* case, refused per se treatment where the attorney was "administratively" suspended at the time he tried the criminal case. See also *Commonwealth* v. *Stirk*, 16 Mass. App. Ct. 280, 284 (1983) (2-1 decision), *S.C.*, 392 Mass. 909, 912 n.2 (1984). Cf. *Commonwealth* v. *Sellon*, 380 Mass. 220, 227-228 (1980); *Commonwealth* v. *Beverly*, 389 Mass. 866, 870 (1983).

due authorization represented defendants in another jurisdiction.[10]

In cases of the kinds just cited, there may be consciously unethical conduct where the attorney acts although aware of the administrative lapse. We go on to a handful of cases where the unethical elements in the attorneys' behavior have been more pronounced; still there is reluctance to apply a per se rule which would void criminal convictions fairly arrived at.[11] Plainer still is the attorney's offense to common morality in the present case — here we have the breach by the attorney of a suspension order based on his guilt of a felony (although, as the single justice noted, not an offense related to his practice of law).[12]

If the question of imposing a per se rule on the present facts were to be examined afresh, we would say, first: on the assumption that there was no material mistake in Modica's advocacy on behalf of Thibeault, little convincing argument can be offered on Thibeault's part for relieving him of his just conviction and granting him a new trial; second: besides

---

[10]See, e.g., *United States* v. *Bradford*, 238 F.2d 395, 396-397 (2d Cir. 1956), cert. denied, 352 U.S. 1002 (1957); *State* v. *Jorbin*, 151 Ariz. 496, 496-497 (1986). Cf. *United States* v. *Merritt*, 528 F.2d 650, 651 (7th Cir. 1976).

[11]See *United States* v. *Hoffman*, 733 F.2d 596 (9th Cir. 1984) (attorney failed to file income tax returns, advised clients to plead guilty, then sought to void the pleas on the basis of his own conflict of interest — attorney suspended in Florida, his admission there being a predicate for his appearance in Federal District Court); *United States* v. *Mouzin*, 785 F.2d 682 (9th Cir.) (with a partial dissent), cert. denied, 479 U.S. 985 (1986) (disregarded practice requirements in court of appeals; gave insufficient check to court reporter — attorney disbarred by that court but appeared in a District Court of the circuit). Cf. *Waterhouse* v. *Rodriguez*, 848 F.2d 375 (2d Cir. 1988), cert. denied, 110 S.Ct. 564 (1989) (attorney represented criminal defendant for a day after disbarment for misappropriating clients' funds; withdrew after learning of his disbarment).

[12]In *Thomas*, the court compared the administrative basis for the suspension involved there with a case where a suspension might be "for a matter raising serious questions such as moral character or other conduct bearing on [an attorney's] capacity and competence." 399 Mass. at 168. The court did not indicate whether in the more serious case supposed it might consider extending the per se rule or would rather apply closer scrutiny to the question whether the attorney's actual representation of the client was "effective." See point 2 below.

his suspension from practice for the commission of crime, Modica should suffer condign discipline for his violation of the suspension order. See *United States* v. *Hoffman*, 733 F.2d 596, 599 (9th Cir. 1984).[13] We conclude that there is no occasion for bestowing an undeserved benefit on Thibeault.

2. *Scrutiny of attorney's conduct of criminal litigation.* Turning to the claim of ineffective assistance by Modica in the usual sense of inadequate representation of the client, we agree with the suggestion that scrutiny should be particularly careful and discriminating where the attorney at the time was under suspension or other bar from practice. See *United States* v. *Butler*, 504 F.2d 220, 223-224 (D.C. Cir. 1974), and remarks in a dissent in the *Hoffman* case, 733 F.2d at 603-604. It should be understood that sound representation comprises not only legal proficiency on the part of the advocate but fidelity to ethical standards, and a question is instantly raised about an attorney's conduct in both aspects when he has been disciplined by suspension from practice and has then violated the suspension order. We note, too, that a contributing reason for a per se rule in the case of the imposter is that the imposter suffers a kind of conflict of interest: the imposter's own consciousness of vulnerability to exposure may affect his or her advocacy by dampening it — and perhaps in ways not easy to discern on the face of a trial transcript. See *United States* v. *Solina*, 709 F.2d at 164.[14] Similar considerations may conceivably enter into the assessment of an attorney's effectiveness in situations not governed

---

[13]Discipline has been imposed many times for violations of suspension orders. See, e.g., *Matter of Sondej*, 1 Mass. Atty. Discipline Rep. 273 (1979); *Matter of Barkin*, 2 Mass. Atty. Discipline Rep. 9 (1980); *Matter of Ponn*, 3 Mass. Atty. Discipline Rep. 171 (1983).

[14]If a per se rule were not applied to the imposter, then, says Judge Friendly, because of potential conflict of interest, "the standard [for measuring effective assistance of counsel] would have to be set very high." 709 F.2d at 164. In *United States* v. *Cancilla*, 725 F.2d 867, 869-870 (2d Cir. 1984), this was said to be a "key consideration" in fashioning the per se rule itself, and in *Waterhouse* v. *Rodriguez*, 848 F.2d 375, 383 (2d Cir. 1988), its "alternative rationale." Cf. *United States* v. *DeFalco*, 644 F.2d 132, 135-137 (3d Cir. 1980).

by a per se rule. In singular cases there may be reason for redoing the criminal proceedings under better auspices.

On the present record, applying stringently the standard of *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974), with the ramifications mentioned, we find no basis for holding that Thibeault was represented inadequately by Modica in the criminal proceeding.[15] Accordingly the order denying Thibeault a new trial should not be disturbed.

*Order affirmed.*

---

[15]The defendant argues that Modica was wrong not to seek a certain suppression order, but this was not put to the judge below on the motion for a new trial, and anyway is threadbare.