[735 NYS2d 118]

In the Matter of JAMES L. HUBBERT (Admitted as JAMES LEON HUBBERT), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, January 3, 2002

#### APPEARANCES OF COUNSEL

*Andral N. Bratton* of counsel (*Thomas J. Cahill,* attorney), for petitioner.

*James L. Hubbert,* respondent pro se.

#### OPINION OF THE COURT

Per Curiam.

Respondent James L. Hubbert was admitted to the practice

of law in the State of New York by the Second Judicial Department on July 31, 1985, as James Leon Hubbert. At all times relevant to this proceeding, he maintained an office for the practice of law within the First Judicial Department.

On or about January 17, 2001, respondent was served with a notice and statement of charges, alleging the violation of various Disciplinary Rules: Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3), by falsely representing to a client that he had filed a judgment of divorce for her; DR 2-110 (a) (3) (22 NYCRR 1200.15), by failing to promptly return the unearned portion of his fee; DR 6-101 (a) (3) (22 NYCRR 1200.30), by neglecting two matters entrusted to him; DR 1-102 (a) (5), by engaging in prejudicial conduct based on his failure to cooperate with the Departmental Disciplinary Committee; and DR 1-102 (a) (7), by engaging in conduct that adversely reflects on an attorney's fitness to practice law.

On or about March 19, 2001, respondent served his answer dated "February 2001," essentially conceding that he neglected one matter and failed to cooperate with the Committee, but denying that he neglected the matrimonial matter, that he failed to refund his unearned retainer, and that his noncooperation with the Committee was intentional.

The evidentiary hearing on the charges was held on March 19, 2001. The facts were almost entirely established by a prehearing stipulation, in which respondent admitted not having returned "to date" any portion of his retainer. At the commencement of the hearing, respondent admitted his neglect of the matrimonial matter and failure to refund promptly the unearned portion of the retainer. Respondent testified on his own behalf with regard to Charge one, which alleged that he made misrepresentations to a client and the Committee in violation of DR 1-102 (a) (4), a charge that was subsequently withdrawn by the Committee. At the conclusion of the hearing, the Referee sustained five out of the six charges, as admitted to by respondent, and recommended a three-month suspension.

A Hearing Panel heard oral argument and, in a report dated on or about July 25, 2001, confirmed the findings of fact made by the Referee. However, the Panel modified the sanction recommendation, increasing it to a six-month suspension and adding the proviso that respondent's reinstatement papers "contain an assurance as to the office reforms he will undertake to permit of a conclusion that similar misconduct will not be repeated."

Respondent, a former Legal Aid attorney who is currently a solo practitioner, was retained in 1998 to obtain a divorce and

was paid $475 for his retainer and court costs. Although the action for divorce was filed in December 1998, respondent lost the case file during relocation of his office and took no further action. Respondent did not respond to his client's inquiries about her case and, in October 1999, he ignored an inquiry for information made on her behalf by an attorney. It was not until after disciplinary proceedings were commenced that, in April 2000, respondent informed his client and the Committee that the judgment would be signed in four to six weeks. However, in May 2000, his client's new attorneys informed her that there were defects in the papers filed by respondent. Respondent never returned numerous phone calls, and new counsel completed her divorce judgment.

Testifying in mitigation, respondent conceded that he occasionally did not return phone calls and that he was ready to refund the unearned portion of his fee.

Respondent was retained by another client in December 1993 and, after his client rejected a $7,000 settlement offer that respondent recommended he accept, the action was dismissed in 1996 for failure to meet the threshold requirements of the No-Fault Law. For two years thereafter, respondent failed to advise his client, either out of embarrassment or neglect, of the status of the action. When finally confronted, respondent paid his client $7,000 out of his own funds.

During the sanction phase of the hearing, held on March 26, 2001, the Committee introduced a letter of admonition issued to respondent in 1996. It cited him for neglect that possibly caused his client's claim to be time barred and noted that, in 1997, respondent had answered a complaint only after being threatened with a suspension motion. On April 25, 2000, respondent was sent a complaint, and on May 4th he was sent another complaint, this time with the warning that because of his conduct in 1997 there would be no extension. Despite that warning, respondent failed to timely respond. In June 2000, a subpoena duces tecum was served on respondent, which he ignored. Finally, on or about August 9, 2000, respondent appeared for his deposition and provided answers to the complaints.

Respondent's failure to cooperate unless threatened with suspension continued with two more complaints filed in December 2000 and January 2001. It was later revealed that two other matters were pending against respondent. Respondent does not maintain malpractice insurance and, since January 2000, he has not had a secretary, contracting out secretarial

work instead. He also testified that he finds writing letters to clients to be burdensome. The Referee specifically found:

> "It would appear that respondent is an attorney who only does, or perhaps, can only afford to do, that which absolutely has to be done, and he has not as yet been convinced that prompt responses to official inquiries concerning his professional conduct are an absolute necessity. This referee, having observed respondent very closely, is convinced of his sincerity in denying that he intended to openly defy the committee, yet his conduct in a series of complaints manifests a casual attitude bordering upon being cavalier. Moreover, the unusual number of disciplinary matters which have arisen in a relatively short period of time demonstrates respondent has a serious problem in how he manages his practice; one who spends nearly all the time in court must be willing to devote adequate assets to maintain a minimal back office operation. He states that the practice of law is not 'brain surgery' or 'rocket science', but it does not require rocket science to keep clients informed, to follow deadlines and to respond promptly to professional inquiries.

> "It is doubtful that a mere public censure would bring home a convincing message considering the number of times he had to be threatened with motions for suspension, which threats even then resulted in only belated compliance. Neither do the facts herein fall within the ambit of those cases where a public censure was deemed appropriate."

In mitigation, respondent presented three character witnesses, two letters from Justices of the Supreme Court attesting to his integrity, and testified on his own behalf. Respondent's main defense was that he had simply taken on more clients than he could properly represent, assertedly because "I'm too caring an individual." The Referee reserved decision pending receipt of further evidence in mitigation from respondent, including payment of the unearned fee. On May 5, 2001, with no proof of payment, the Referee recommended that respondent be suspended from the practice of law for three months.

By way of a report dated July 25, 2001, the Hearing Panel modified the Referee's recommended sanction, concluding that

respondent's neglect of his clients' matters together with his misrepresentations and his unexplained delay in refunding the unused portion of the matrimonial retainer warranted a six-month suspension. The Panel further recommended that any papers submitted for reinstatement should contain an assurance as to the office reforms respondent intends to undertake to warrant the conclusion that similar misconduct will not be repeated.

The Departmental Disciplinary Committee now seeks an order confirming the Hearing Panel's determination, suspending respondent for a period of six months and conditioning any reinstatement upon respondent's submission of evidence of the office reforms he will undertake to insure that similar misconduct will not recur. Respondent has submitted late opposition papers, in which he argues that since there was no venality or dishonesty, the appropriate sanction should be public censure, not a term of suspension.

The findings of fact and conclusions of law are confirmed, especially since they are based upon respondent's admissions of the charges and are supported by the evidence. Contrary to respondent's assertion, public censure is not appropriate in view of the unusual number of disciplinary complaints that have arisen in a relatively short period of time. As the Committee argues, a suspension is required since respondent seriously neglected more than one legal matter and had previously received an admonition based upon facts similar to the instant matter. His conduct demonstrates a pattern of noncooperation with the Committee over an extended period of time, including ignoring a subpoena to which he responded only after being threatened with suspension proceedings. While respondent's lack of cooperation was found not to be willful, both the Referee and Hearing Panel expressed concern that it epitomized his "cavalier" attitude, both towards his professional responsibilities to his clients and towards official inquiries. Moreover, the existence of even more recent complaints, still pending with the Committee, suggests that respondent continues to have difficulty in responding to client inquiries and in following through with legal matters.

Accordingly, the Committee's motion for an order confirming the Hearing Panel's determination, which confirmed in part the Referee's report and which recommended that respondent be suspended for a period of six months and that any reinstatement be conditioned upon respondent's submitting evidence of office reforms that he will undertake to insure that similar misconduct will not be repeated, should be granted.

NARDELLI, J. P., SULLIVAN, ROSENBERGER, RUBIN and BUCK-LEY, JJ., concur.

Petition granted and respondent suspended from the practice of law in the State of New York for a period of six month, effective February 1, 2002, until the further order of this Court, as indicated.