[769 NYS2d 490]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v DAVID
DEGONDEA, Respondent.

First Department, December 9, 2003

## APPEARANCES OF COUNSEL

*Robert M. Morgenthau, District Attorney*, New York City (*Morrie I. Kleinbart* and *Donald J. Siewert* of counsel), for appellant.

*Center for Appellate Litigation (Robert S. Dean* and *Claudia S. Trupp* of counsel), for respondent.

## OPINION OF THE COURT

FRIEDMAN, J.

This case, arising from the shooting death of an undercover police detective more than a decade ago, requires us to decide whether defendant's conviction for the crime should be vacated based on his allegation that the trial judge fell asleep, or was otherwise inattentive, during parts of voir dire. Defendant contends that, as a result of this judicial conduct, the court erroneously denied his for-cause challenge to a prospective juror, a ruling that was not challenged on direct appeal. Although both defendant and his trial counsel aver that they were fully aware of the judge's alleged dozing during voir dire, they remained silent about it at the time and for years thereafter. The allegation of judicial somnolence was first advanced as a basis for granting legal relief on a motion filed more than six years after defendant's conviction—a conviction that was affirmed on appeal—and three years after the death of the judge in question.

There is no question that it is utterly unacceptable for a judge to sleep while presiding over a trial. Here, however, the question is whether defendant may consciously acquiesce in such conduct, and then seek, years later, to collaterally attack his conviction on that very basis. We conclude that defendant's silence and delay preclude the attack he now makes. Moreover, we find that defendant has not proven his claim by a preponderance of the evidence. Accordingly, we reverse Supreme Court's order granting defendant's motion and reinstate his conviction.

*Defendant's Crime, Trial and Conviction*

Detective Luis Lopez, posing as a drug dealer, arranged to buy several pounds of marijuana from defendant and his confederate, Edward Arce. On March 10, 1993, at the agreed-upon time and place of the sale, as Lopez and members of his backup team prepared to make the arrests, defendant began shooting at them. Lopez was hit and fatally wounded.

The trial of defendant and Arce commenced in November 1994 before the late Justice James Leff. Defendant was represented by retained counsel, Melvin Sachs, Esq. At trial, defendant conceded that he had been engaged in drug dealing and that he had fired shots in the incident. He offered a justification defense, testifying that he had fired in self-defense based on his belief that the officers were drug dealers attempting to rob him. The jury rejected this defense, convicting defendant of, inter alia, the murder of Lopez and the attempted murder of another police officer. On January 9, 1995, Justice Leff sentenced defendant to prison terms totaling 55 years to life.

*Proceedings on the Direct Appeal*

On the direct appeal of his conviction, defendant argued, among other things, that the trial court had erroneously denied his for-cause challenges to two members of the first-round voir dire panel, Jurors Nos. 5 and 11. Although there was no transcript of the first-round voir dire examinations (neither side having requested it), defendant argued that the existing record was sufficient to permit review of the issue concerning these two panelists because Justice Leff had not contradicted counsel's assertions that they had stated that they could not be fair. The court had also denied defendant's for-cause challenge to Juror No. 2 during the first round of jury selection, but defendant's direct appeal did not raise that ruling as a basis for reversal.

By order dated December 3, 1998, this Court held defendant's appeal in abeyance, and remanded the matter for a hearing to reconstruct the voir dire testimony of Jurors Nos. 5 and 11 (*People v Degondea*, 256 AD2d 39 [1998]). We agreed with the People that the existing record did not furnish a sufficient basis for appellate review in that it showed that "a clear dispute exist[ed] as to the substance of the jurors' [i.e., Jurors Nos. 5 and 11] statements" (*id.* at 40-41). We further found, however, that defendant had been "effectively thwarted from creating an adequate record" because, after the challenges for cause were denied, "defense counsel made repeated requests for the court to requestion the jurors as to whether they could be fair, and the court denied each request" (*id.* at 41, citing *People v Harrison*, 85 NY2d 794 [1995]). We therefore remanded for a reconstruction hearing.

On remand to Supreme Court, the matter was assigned to Justice Marcy Kahn (Justice Leff having passed away in April of 1998), and the reconstruction hearing began in January of 1999. Upon the conclusion of the reconstruction hearing, defendant

withdrew his claim of error relating to Juror No. 11, leaving only Juror No. 5 at issue on the direct appeal. By order dated February 17, 2000, this Court affirmed defendant's conviction, finding that he had not sustained his burden of proving that the trial court had erred as a matter of law in denying the for-cause challenge to Juror No. 5 (*People v Degondea*, 269 AD2d 243 [2000], *lv denied* 95 NY2d 834 [2000]).

*Defendant's CPL 440.10 Motion*

In April 2001, nearly 10 months after the Court of Appeals denied his motion for leave to appeal from the affirmance of his conviction, defendant moved to vacate the conviction pursuant to CPL 440.10 (1) (f) and (h). These provisions provide for vacatur of a judgment of conviction at any time, upon the defendant's motion, on the ground that "[i]mproper and prejudicial conduct not appearing in the record occurred . . . which conduct, if it had appeared in the record, would have required a reversal of the judgment upon an appeal therefrom" (CPL 440.10 [1] [f]), and on the ground that "[t]he judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States" (CPL 440.10 [1] [h]).

In seeking to vacate his conviction more than six years after judgment was rendered, and three years after Justice Leff died, defendant for the first time advanced as a basis for granting legal relief from the conviction the contention that the trial judge had periodically fallen asleep while presiding over jury selection. Defendant contended that the judge's alleged somnolence constituted "[i]mproper and prejudicial conduct not appearing in the record" that would have required reversal on appeal had it appeared in the record (CPL 440.10 [1] [f]). Defendant claimed that the judge's alleged sleeping had prejudiced him in that the denial of his for-cause challenge to Juror No. 2 during the first round of jury selection had resulted from judicial inattention at voir dire.[1] Defendant further contended that, even if he had not been prejudiced by the judge's alleged dozing, such conduct was the equivalent of judicial absence from the

---

1. As previously indicated, voir dire of the first-round panel (which included Juror No. 2) was not transcribed, although the challenge colloquy was. In challenging Juror No. 2 for cause, defendant's trial counsel asserted that "it was clear that [Juror No. 2] said he couldn't be fair," and "[t]hat he couldn't apply the law." The court disagreed with these assertions, stating that Juror No. 2 "was the one who was a Grand Juror, banker, very intelligent gentleman." As with Jurors Nos. 5 and 11, the court denied counsel's requests to recall Juror No. 2 for further questioning on the record.

proceedings and therefore violated defendant's constitutional right to a jury trial (CPL 440.10 [1] [h]).

The affirmation in support of defendant's CPL 440.10 motion explained that defendant was prompted to bring the motion by evidence received at the reconstruction hearing (regarding Jurors Nos. 5 and 11) that purportedly raised substantial questions both about Juror No. 2's ability to render an impartial verdict, and about the trial judge's attentiveness, or lack thereof, while he presided over voir dire and the trial. With regard to the judge's alleged somnolence, defendant relied on reconstruction hearing testimony by his trial counsel, Sachs, and trial counsel for codefendant Arce, Jose Muniz, Esq., to the effect that the judge had appeared to them to be sleeping through portions of the voir dire examinations and the trial. With regard to Juror No. 2, defendant contended that the propriety of the denial of the for-cause challenge to that panelist was placed in doubt by the reconstruction hearing testimony of Sachs, Muniz and defendant himself, as well as by the voir dire notes kept by Muniz and Assistant District Attorney Peter Fleming, the second-seat prosecutor, which notes defendant had obtained in connection with the reconstruction hearing. This evidence, defendant claimed, tended to show that Juror No. 2 believed that society was too "liberal" in dealing with drug crime; that he had a strongly favorable predisposition toward the police; and that he had reservations about applying the law of justification in a murder case.[2] Defendant's current counsel also represented that, when she contacted Juror No. 2 (whom she had independently located) by telephone in February 2001, he made remarks that put his ability to be impartial in question.

The People raised procedural objections to the motion, but Justice Kahn overruled them in pertinent part, and held an evidentiary hearing on the motion for several days in 2001. The witnesses called by the defense were defendant himself, Mary Ann Shaw (defendant's mother), Sachs, Muniz and Juror No. 2. The People called Assistant District Attorney William Greenbaum, who had been the lead prosecutor, Fleming and Assistant

---

2. In March 1999, defendant had relied on the same testimony and notes concerning Juror No. 2 in requesting that this Court, pursuant to Judiciary Law § 509 (a), release identifying information for Juror No. 2 so that the scope of the reconstruction hearing held in connection with his direct appeal could be expanded to include the voir dire of Juror No. 2. This request was denied. Thereafter, defendant repeated substantially the same request in his posthearing supplemental brief on the direct appeal. Our February 2000 order did not address this request, thereby implicitly denying it.

District Attorney Susan Krischel, who, as a student intern with the District Attorney's office at the time of trial, had assisted the prosecutors. The voir dire notes of Muniz, Fleming and Krischel were received into evidence at the CPL article 440 hearing, as were the transcript of the jury selection proceedings and the record of the prior reconstruction hearing.

## DECISION OF THE SUPREME COURT

In December 2001, Justice Kahn issued a decision and order granting defendant's motion. In her findings of fact, Justice Kahn first concluded that Juror No. 2 had made certain statements during his voir dire examination that, in Justice Kahn's view, were disqualifying in the absence of subsequent rehabilitative testimony. Second, the court found that the trial judge failed to grant the for-cause challenge to Juror No. 2, not simply due to an error of judgment or a misapprehension of fact, but because the judge had been improperly inattentive to the proceedings. In making these findings, the court recognized that, under CPL 440.30 (6), defendant had the burden of proving, by a preponderance of the evidence, every fact essential to support his motion, and found that defendant had sustained that burden of proof.

With regard to Juror No. 2's statements at voir dire, Justice Kahn acknowledged that the evidence showed that he had responded in the affirmative when Greenbaum asked him whether he could render a fair and impartial verdict based on the evidence and according to the judge's instructions on the law, regardless of his agreement or disagreement with that law. Justice Kahn further acknowledged that "the evidence at the hearing demonstrated that the juror never made . . . a statement verbatim" to the effect "that he could not be fair."[3] However, Justice Kahn found that, in response to Sachs' questioning (which followed Greenbaum's), Juror No. 2 had expressed the opinion that the criminal justice system was too "liberal" in its approach to drug crime. In addition, although Fleming's voir dire notes indicated that Juror No. 2 had "recognize[d]" the principle of self-defense, and Juror No. 2 testified at the hearing that he could have followed the court's

---

3. Sachs, in raising the challenge to Juror No. 2, had asserted that Juror No. 2 "said he couldn't be fair." At the CPL article 440 hearing, however, Sachs admitted, in substance, that his statement to the trial court had been intended to convey his conclusions about Juror No. 2's ability to be impartial, rather than the actual words of the prospective juror.

instructions on self-defense, Justice Kahn found that he had stated at voir dire that "murder" could never be justified.[4]

Justice Kahn found that Juror No. 2's expression of his views on drug crime and the lack of justification for "murder" negated the assurance of impartiality he had given earlier in response to Greenbaum's questioning (which Justice Kahn deemed to have been "formulaic"), as well as any prior assurance of his willingness to apply the law of self-defense as instructed by the court. The court found that the statements concerning drug crime and justification raised such "serious questions" about Juror No. 2's qualification for service that he could not thereafter have been properly seated unless he were rehabilitated through further questioning. As the court found that no such additional examination had been conducted, it concluded that the trial court had erroneously denied the for-cause challenge to Juror No. 2.

Justice Kahn also found that the trial judge "was inattentive during the questioning of [Juror No. 2] and consequently failed to hear his disqualifying answers" concerning drug crime and the justification defense, which "inattention resulted in [the judge's] failure to consider, and base his ruling upon, the entirety of the juror's responses." The finding of inattention was based, in major part, on testimony by Sachs, Muniz, defendant, defendant's mother and Krischel to the effect that they saw the judge "frequently closing his eyes for extended periods during the proceedings." Justice Kahn made the finding of inattentiveness notwithstanding her acknowledgment that it had not been proven that the trial judge actually fell asleep during the voir dire of Juror No. 2, since "[n]one of the witnesses could state that the judge had been sleeping" during that portion of the proceedings, and Krischel, for one, "stated that the judge managed to rule on objections, even with his eyes closed."[5]

Justice Kahn found the conclusion that the trial judge had been impermissibly inattentive to the voir dire of Juror No. 2

---

4. We observe that, as Juror No. 2 himself appears to have recognized at the CPL article 440 hearing, "murder," according to its dictionary definition (*see* Merriam-Webster's Collegiate Dictionary 766 [10th ed 1998]), is always unjustified, and, by the same token, a justified homicide is never a murder.

5. Krischel testified that, even with his eyes closed, the judge "would frequently respond to things either the witnesses said or that one of the lawyers said," and that he "oftentimes perked up when he would admonish lawyers, which he did relatively frequently." Krischel further testified that she could not recall any occasion when the judge was "not responsive to what was happening in the courtroom," and that she never saw the judge's head "nod."

(whether or not the judge actually had been sleeping) bolstered by the judge's failure, in responding to the for-cause challenge to Juror No. 2, to make "any mention of the juror's . . . colloquy with defense counsel Sachs on either topic [drug crime and the justification defense] which gave rise to questions about his qualification to serve." Justice Kahn found further circumstantial support for her conclusion of judicial inattentiveness in the trial judge's purportedly "conflicting statements [on the record] regarding whether or not [Juror No. 2] had said that he could not be fair." Justice Kahn also found it significant that the jury selection transcript and the witnesses' hearing testimony showed that the trial judge had demonstrated impatience during the proceedings.

Based on the foregoing findings of fact, Justice Kahn, after again rejecting the People's procedural objections to considering the motion on the merits, concluded that defendant was entitled to relief under CPL 440.10. With regard to the prong of the motion brought under CPL 440.10 (1) (f), Justice Kahn held that the trial judge's inattention during voir dire constituted improper conduct not appearing in the record, which conduct (1) had prejudiced defendant in that the judge's inattention led to the denial of the for-cause challenge to Juror No. 2 and the consequent expenditure of a peremptory challenge, and (2) would have required reversal on appeal had it appeared in the record. With regard to the prong of the motion brought under CPL 440.10 (1) (h), Justice Kahn held that the trial judge, by his inattentiveness during the jury selection proceedings, had "abdicate[d] [the court's] non-delegable duty to oversee the voir dire," thereby "depriv[ing] the defendant of his right to trial by jury guaranteed under Article I, section 2 of the New York State Constitution."

## ANALYSIS

On appeal, the People argue that defendant's postjudgment motion was required to be denied on procedural grounds pursuant to CPL 440.10 (2) (c), or, alternatively, that the motion should have been denied on procedural grounds, as a matter of judicial discretion, pursuant to CPL 440.10 (3) (a). The People further argue that, on the merits, defendant has failed to establish his entitlement to relief under CPL 440.10 (1) (f) and (h). For the reasons that follow, we reverse the order of the Supreme Court, deny defendant's motion, and reinstate the judgment of conviction, on both procedural and substantive grounds.

At the outset, we point out that the central premise of defendant's motion, and of Supreme Court's grant of relief, was the contention that the trial judge had slept—or, as the motion court found, had been inattentive—during voir dire. The purportedly erroneous denial of the for-cause challenge to Juror No. 2 was neither advanced by defendant, nor adopted by the motion court, as an independent ground for vacating the judgment. Indeed, any claim of error relating to Juror No. 2 would be barred from consideration as an independent ground for vacating the judgment, since such issue could have been considered on the direct appeal, as were the issues relating to Jurors Nos. 5 and 11 (*see* CPL 440.10 [2] [c]). Thus, the ruling on Juror No. 2 is at issue in these postjudgment proceedings only insofar as that ruling constitutes the prejudice that defendant allegedly suffered by reason of the judge's inattention to the proceedings, so as to entitle defendant (in his view and the motion court's) to relief under CPL 440.10.[6] Stated otherwise, the crux of the motion is the claim of judicial somnolence or inattention.

I. *Procedural Grounds for Denying the Motion*

Upon our independent review of the record, and substituting our discretion for that of the motion court, we find that, under the circumstances of this case, the motion to vacate the judgment should have been denied, pursuant to CPL 440.10 (3) (a), on the ground that defendant unjustifiably failed to use due diligence to cause the matter of the trial judge's somnolence or inattention "to appear on the record in a manner providing adequate basis for [appellate] review."[7] In applying this procedural bar to collateral relief, we give effect to the legislative intent

---

**6.** Defendant contends that only CPL 440.10 (1) (f) requires a showing of prejudice, but, as discussed subsequently, a showing of prejudice is also required to obtain relief under CPL 440.10 (1) (h).

**7.** Subdivision (3) of CPL 440.10 provides in pertinent part:

"Notwithstanding the provisions of subdivision one, the court may deny a motion to vacate a judgment when:

"(a) Although facts in support of the ground or issue raised upon the motion could with due diligence by the defendant have readily been made to appear on the record in a manner providing adequate basis for review of such ground or issue upon an appeal from the judgment, the defendant unjustifiably failed to adduce such matter prior to sentence and the ground or issue in question was not subsequently determined upon appeal. . . .

"Although the court may deny the motion under any of the circumstances specified in this subdivision, in the interest of justice and for good cause shown it may in its discretion grant the motion if it is otherwise meritorious and vacate the judgment."

that the CPL 440.10 motion not be "employed as a substitute for direct appeal" (*People v Cooks*, 67 NY2d 100, 103 [1986]). As we recently observed in affirming the denial of a CPL 440.10 motion pursuant to CPL 440.10 (3) (a), "[w]hile an article 440 motion is designed for the purpose of developing facts dehors the trial record, this does not apply to facts that should have been placed on the record during trial" (*People v Williams*, 286 AD2d 620, 620 [2001], *lv denied* 97 NY2d 659 [2001]; *see also People v Donovon*, 107 AD2d 433, 443 [1985] [the purpose of a CPL 440.10 motion "is to inform a court of facts not reflected in the record and unknown at the time of the judgment"], *lv denied* 65 NY2d 694 [1985]). Thus, because defendant, as described below, has inappropriately used CPL 440.10 to collaterally attack his conviction based on facts known to him during trial that he unjustifiably failed to place on the record, we reverse and deny his motion.[8]

The principal facts on which defendant bases his contention that Justice Leff slept during the first round of jury selection, and on which the motion court based its finding of judicial inattention, are (1) the hearing testimony as to the judge's demeanor during the proceedings, i.e., that he often presided with his eyes closed and his head tilted forward or back, and (2) Juror No. 2's purportedly disqualifying statements (as evidenced by testimony given years after the fact) concerning drug crime and the justification defense, to which the judge failed to refer in denying the challenge for cause to that prospective juror. It is undisputed that defendant failed to adduce these matters upon the record at any time before the court passed sentence on him.

Defendant and his trial counsel, Sachs, testified at the CPL article 440 hearing that they were fully aware of the judge's purportedly drowsy appearance during the proceedings, as were defendant's mother and the attorney for codefendant Arce. Nonetheless, Sachs never brought to the judge's attention, as an additional reason for requestioning prospective jurors whom the court had refused to excuse for cause, that the judge appeared to have been dozing during the prior examination. Further, when the judge denied defendant's for-cause challenge to Juror No. 2, and refused to recall him for additional questioning, Sachs did not recount to the judge the purportedly disqualifying statements by Juror No. 2 that defendant now claims the judge failed to hear. Those statements, so strongly

---

8. In view of this conclusion, we need not reach the People's argument under CPL 440.10 (2) (c).

emphasized in defendant's current arguments and in the motion court's decision, were left entirely unremarked in counsel's colloquy with the court concerning Juror No. 2 (as Sachs admitted in his hearing testimony), and, like the judge's somnolent appearance, were never raised on the record at any time prior to defendant's sentencing. In this regard, we find it significant that, had defendant chosen to pursue the issue regarding Juror No. 2 on direct appeal, his failure to raise the statements concerning drug crime and justification in the trial court would have left his challenge, insofar as based on such statements, unpreserved for consideration on direct appeal (*see People v Harris*, 98 NY2d 452, 486 n 12 [2002]; *People v Deschamps*, 256 AD2d 13 [1998], *lv denied* 93 NY2d 923 [1999]; *People v Arredondo*, 226 AD2d 322, 322 [1996], *lv denied* 88 NY2d 964 [1996]).

Defendant and Sachs admitted at the hearing that Sachs, with defendant's knowledge, made a conscious choice to remain silent, for the duration of voir dire and trial, about the judge's alleged somnolence or inattention. Sachs testified that, based on his experience trying cases before Justice Leff, he did not believe that complaining about the judge's apparent drowsiness would have changed the judge's behavior, and that such a complaint would only have "alienate[d]" the judge and "exacerbate[d] the situation." Similarly, defendant testified that, when he pointed out to Sachs that the judge's eyes were closed, Sachs told him, in substance, "don't worry about it." Muniz, the codefendant's attorney, who also noticed Justice Leff's demeanor but raised no objection on behalf of his client, suggested in his hearing testimony that Sachs may have preferred to have an inattentive judge because "he could get away with a lot more cross-examination without the judge listening to what he had to say."

Justice Kahn, in rejecting the People's procedural arguments, apparently interpreted this Court's prior holding that the trial court, by refusing to recall prospective jurors for requestioning, had "thwarted" defendant from creating an adequate record of the first-round voir dire (*see People v Degondea*, 256 AD2d at 41) to mean that defendant had been similarly thwarted from creating a record of the judge's alleged somnolence or inattention. This is an unwarranted expansion of what our December 1998 order says. Defendant raised no issue of alleged judicial somnolence or inattention on his direct appeal, and our comment concerning the thwarting of his counsel's efforts to create a record referred only to the efforts to create a record of the voir dire testimony itself. Our attention has not been directed to

anything that would have prevented Sachs, had he deemed it to be in his client's best interest, from putting a statement on the record referring to the judge's appearance of somnolence, or to the purportedly disqualifying voir dire statements the judge allegedly failed to hear.

We disagree with the motion court's view that Sachs' fear of "antagoniz[ing] an already impatient judge" constitutes a sufficient ground for relieving defendant of the consequences of his failure to cause the alleged judicial somnolence or inattention to appear on the record. First, counsel's failure to remind the trial court of Juror No. 2's purportedly disqualifying statements plainly cannot be attributed to, or justified by, any fear of antagonizing the judge. Further, we believe that it would have been possible to raise the issue of the judge's allegedly sleepy appearance in a manner that, while tactful and inoffensive, still would have made the issue apparent on the face of the record so as to make appellate review possible.

Justice Kahn opined that, while the trial court's displeasure did not generally inhibit Sachs from strenuously objecting to adverse rulings, "[t]here is a significant difference between alerting the court to a purely legal issue . . . and challenging the judge's personal courtroom behavior . . . ." Again, we believe that an objection to judicial somnolence could have been expressed by means other than an aggressive "challeng[e to] the judge's personal courtroom behavior." In any event, it does not follow that defendant's failure to place the matter of judicial somnolence or inattention on the record was justified for purposes of CPL 440.10 (3) (a). Even accepting as true defendant's contention of judicial inattentiveness, the record supports the view that Sachs made a calculated strategic judgment to remain silent about the judge's alleged somnolence or inattention, based on a careful weighing of the potential benefits of complaining against the attendant risks. In saying this, we mean no criticism of counsel's conduct. However, having been convicted after such strategic silence, defendant should not be granted a new trial based on matters known to him, and to his able counsel, which he chose not to place on the record, and to which he chose not to object, while rectification was still possible (*see People v Robles*, 86 NY2d 763, 764-765 [1995]; *People v Ramos*, 26 NY2d 272, 274-275 [1970]; *People v Tamayo*, 222 AD2d 321, 322 [1995], *lv denied* 88 NY2d 886 [1996]). "Having tacked, thus, and failed, defendant may not relitigate his case [in postjudgment proceedings]" (*People v Littlejohn*, 72 AD2d 515, 515 [1979]).

In light of the foregoing, we believe that the circumstances of this case fall within the scope of CPL 440.10 (3) (a), under which a motion to vacate a judgment may be denied in the exercise of the court's discretion. Substituting our discretion for that of the motion court, we find that this motion should have been denied pursuant to CPL 440.10 (3) (a). In reaching this determination, we are influenced by the fact that the prejudice defendant claims to have suffered by reason of the judicial inattention—the denial of the for-cause challenge to Juror No. 2—did not result in the seating of any juror whose impartiality defendant has impugned, since defendant exercised a peremptory challenge to exclude Juror No. 2. We recognize, of course, that defendant's subsequent exhaustion of his peremptory challenges prior to the completion of jury selection would have provided grounds for reversal on a direct appeal in which defendant raised the issue of the for-cause challenge to Juror No. 2 and established that such challenge should have been granted (*see People v Culhane*, 33 NY2d 90 [1973]). Defendant did not, however, raise the issue of the for-cause challenge to Juror No. 2 on his direct appeal, although, as we previously observed, that issue could have been reviewed on the appeal, as were the issues concerning two other prospective jurors. In our judgment, the appropriate exercise of discretion under these circumstances—in which "defendant does not contend that the jury as constituted contained a biased juror" (*People v Harris*, 98 NY2d at 486 n12), and neither does he contend that his trial was otherwise actually rendered unfair as a result of the challenged judicial conduct—is to deny the motion on this procedural ground.

Our conclusion that the motion should be denied pursuant to CPL 440.10 (3) (a) draws significant additional support from the fact of defendant's long delay before he finally moved to vacate the judgment in April 2001, more than six years after he was sentenced in January 1995. Defendant's explanation for this delay is that he did not have a sufficient evidentiary basis for moving until after the first reconstruction hearing. Even putting aside the fact that defendant did not make his motion until two years after the first reconstruction hearing concluded in March 1999, we find this explanation to be inadequate. The facts at the heart of defendant's CPL 440.10 motion—the judge's alleged somnolence or inattention during voir dire, and the purportedly disqualifying statements by Juror No. 2 that the judge allegedly failed to hear—were known to defendant and his trial counsel during the voir dire itself. To the extent that de-

fendant feared incurring a harsher sentence if he raised this issue before final judgment, he could have moved to vacate on such grounds promptly after sentencing without fear of incurring any adverse consequences. The lapse of time during which defendant failed to seek relief under CPL 440.10 has undoubtedly prejudiced the People, in that their ability to successfully retry the underlying criminal case diminishes with each passing year.

Defendant's six-year delay before moving under CPL 440.10 is not sufficiently explained by the fact that his present counsel was focusing on the direct appeal, and the reconstruction proceedings attendant thereto, until February 2000 (*see People v Friedgood*, 58 NY2d 467, 471 [1983] [three-year delay after conviction in bringing CPL 440.10 motion was not explained by counsel's having been "busy working on defendant's appeal"]). Neither is the six-year delay excused by appellate counsel's procedurally inappropriate efforts, beginning in March 1999, to expand the scope of the prior reconstruction proceedings to encompass Juror No. 2 (*see* n 2, *supra*). Juror No. 2's qualifications were not a proper subject for the reconstruction hearing held in connection with the direct appeal, since defendant chose not to raise any issue concerning Juror No. 2 in his original appellate brief, thereby abandoning any such issue.[9] In any event, even if defendant had moved under CPL 440.10 in March 1999 (which he did not), the delay of four years after final judgment would have been unjustifiable, given that the relevant facts were, we reiterate, known to defendant and his trial counsel at voir dire in November 1994.

Defendant argues further that the judge's alleged somnolence or inattention was the equivalent of judicial absence from the proceedings, and therefore constituted a "mode of proceedings" error requiring reversal on appeal whether or not defendant preserved the point at trial (*see People v Ahmed*, 66 NY2d 307 [1985]; *People v Pinkney*, 272 AD2d 52 [2000], *lv denied* 95 NY2d 937 [2000]), and, on a CPL 440.10 motion, vacatur of the judgment whether or not defendant used due diligence to adduce the relevant facts on the record. We reject this argument on the ground that a judge's alleged somnolence or inattention during voir dire or trial (although, to reiterate, utterly unacceptable) does not constitute a "mode of proceedings" error.

---

**9.** Contrary to defendant's arguments, the People's opposition to expanding the prior reconstruction hearing to include Juror No. 2 cannot plausibly be construed to have waived, in advance, any procedural grounds for opposing a subsequent CPL 440.10 motion.

We recognize, of course, that "[t]he presence of and supervision by a Judge constitutes an integral component of the right to a jury trial" (*People v Toliver*, 89 NY2d 843, 844 [1996]), and that the requirement of judicial supervision extends to jury selection proceedings so that the judge can discharge his or her duty to act as "the ultimate arbiter of a prospective juror's fitness to serve" (*id.* at 845). Where the complaint is that the judge has been physically absent from the courtroom during voir dire, the fact of judicial absence will generally be apparent on the face of the record, and it will necessarily follow from the fact of judicial absence that the judicial function was not performed during the period of the absence (*see People v Toliver, supra; People v Pinkney, supra; cf. People v Hernandez*, 94 NY2d 552 [2000]). Thus, in the case of a claim that the judge was actually absent during voir dire, the societal interest in maintaining the integrity of the criminal justice system, regardless of the defendant's acquiescence in the procedural irregularity (*see People v Udzinski*, 146 AD2d 245, 251-252 [1989]), outweighs the societal interest in the finality of the criminal judgment.

The balance of societal interests is far different, however, where the claim is one of apparent somnolence or inattention by the judge while he was actually presiding in the courtroom, and the defense, for strategic reasons, allowed the condition to continue. Such a claim is subject to dispute by its very nature, inasmuch as it focuses on the judge's subjective state of mind, a matter subject to proof only by indirect and circumstantial evidence, aside from the judge's recollections (which are unavailable here in any event, due to defendant's delay in bringing the motion). As this case illustrates, a claim of judicial somnolence or inattention is readily generated by the inherently biased interpretations of ambiguous evidence by the defendant, his family and his trial counsel. To require that any such claim be entertained on the merits, even if, as here, the claim is being asserted for the first time on a CPL 440.10 motion made years after judgment was rendered, would place an unfair burden on the People, and would be inconsistent with society's legitimate interest in maintaining the finality of criminal judgments (*see People v Howard*, 12 NY2d 65, 66 [1962], *cert denied* 374 US 840 [1963]). Accordingly, we conclude that judicial somnolence or inattention does not rise to the level of a "mode of proceedings" error, and that such a claim may be waived by the defendant's failure at trial, with knowledge of the relevant facts,

either to place such facts on the record, or to preserve the claim by appropriate objection.

## II. *The Merits of the Motion*

Even if we reach the merits of defendant's motion, notwithstanding our finding that it should be denied on procedural grounds, we conclude that defendant has not borne his burden of proving by a preponderance of the evidence (*see* CPL 440.30 [6]) an entitlement to relief under CPL 440.10 (1) (f) or (h). To be precise, we find, based on our independent review of the evidence, that defendant has not proven that Justice Leff either slept or was impermissibly inattentive during the proceedings. We turn first to the allegation that the judge slept while on the bench, and then to the allegation of inattentiveness.

With regard to the allegation of judicial somnolence (which the motion court also found not proven), in spite of the testimony that the judge sometimes presided with his eyes closed and his head tilted forward or back, the weight of the credible evidence refutes the allegation that he was asleep during the proceedings. In particular, we find credible the testimony of prosecution witness Krischel that the judge would, with his eyes closed, "frequently respond to things either the witnesses said or that one of the lawyers said," and that he would frequently "perk[ ] up" to "admonish lawyers." Although we hasten to express our unequivocal disapproval of a judge's presiding over proceedings of any kind with closed eyes, even if awake, that a person's eyes are closed does not necessarily mean that he or she is asleep.

Although she correctly found that defendant had not proven that the trial judge slept during voir dire, Justice Kahn still granted the motion based on her finding that the judge had been "inattentive during the questioning of [Juror No. 2]." Apart from the evidence concerning the judge's appearance, Justice Kahn based her finding of inattentiveness largely on Justice Leff's failure to refer, in ruling on the challenge to Juror No. 2, to the prospective juror's purportedly disqualifying statements concerning drug crime and the justification defense, and on what Justice Kahn deemed to be the trial court's "conflicting" characterizations of Juror No. 2's voir dire statements. However, neither of these bases for the finding of inattentiveness bears scrutiny.

With regard to the purportedly disqualifying statements, even assuming that such statements actually were made and were disqualifying, Justice Leff cannot be faulted for failing to refer

to them for the simple reason that Sachs, defendant's own attorney (who allegedly elicited the statements in question), did not mention the statements himself when he asserted the challenge, thereby leaving any claim of error based on such statements unpreserved for appellate review. Further, we disagree with the motion court's view that the record reflects that the trial judge made contradictory statements about Juror No. 2's statements. It is true that Justice Leff said "[t]hat is not so" in response to Sachs' assertion that "[i]t was clear that [juror No. 2] said he couldn't be fair," and that Justice Leff later said, "I understand they said they couldn't be fair and I don't accept that." The latter statement, however, was made in the context of a discussion that included all four of the panelists defendant had challenged for cause, and there is no reason to believe that the statement was made with Juror No. 2 specifically in mind. In any event, the hearing evidence established that Juror No. 2 in fact never did state that he could not be fair, as is recognized in Justice Kahn's decision. Certainly, Justice Leff's statement falls far short of proving that he was so inattentive that the proceedings must be treated as a nullity.

More fundamentally, we do not believe that a claim of judicial inattention, based solely on the judge's appearance, demeanor and errors in his or her stated recollection of prior proceedings, can give rise to a claim of constructive judicial absence requiring vacatur of the judgment. Judges, like all human beings, are prone to occasional lapses of memory. Inevitably, such errors will arise in the context of a trial involving complex issues of fact and law, in which the court is required, under intense time pressure, to make frequent rulings on matters of dispute, without the benefit of a complete record of prior testimony. We do not exclude the possibility that cases may arise where a new trial would be warranted by proof that the trial judge was actually asleep while presiding, or that he or she was affirmatively engaged in other activities inconsistent with attention to the courtroom proceedings. In this case, however, no such proof has been presented. Where, as here, the inference of inattention is drawn from nothing more than the judge's allegedly sluggish appearance, impatience and a few arguable judicial misstatements artfully highlighted by counsel, the extraordinary relief of vacating an otherwise final judgment of conviction should not be granted.

Since we conclude that defendant's claim of judicial somnolence or inattention has not been proven, we need not, in this

CPL 440.10 proceeding, reach the question of whether the trial court erred in denying the for-cause challenge to Juror No. 2. As previously discussed, any such error would be relevant to this CPL 440.10 motion only insofar as it may have been the prejudice resulting from the alleged judicial somnolence or inattention, which somnolence or inattention, we repeat, defendant has failed to prove. We would observe, however, that the denial of the challenge to Juror No. 2 cannot be causally tied to the judge's alleged somnolence in any event, since, as Justice Kahn acknowledged, even the witnesses who testified to the judge's somnolent appearance were unable to say whether the judge gave that appearance during the voir dire of Juror No. 2. We further note that, contrary to defendant's arguments, it has been authoritatively held that a showing of prejudice from an alleged constitutional error is required to warrant vacatur of a conviction pursuant to CPL 440.10 (1) (h) (*see People v Friedgood*, 58 NY2d at 470-471, 470 n 1). Moreover, the weight of authority from other jurisdictions addressing the issue of alleged somnolence of a judge presiding at a criminal trial supports the position that such judicial somnolence does not provide grounds for disturbing the judgment in the absence of proof that the judge's inattention resulted in some prejudice to the defense (*see United States v White*, 589 F2d 1283, 1289 [5th Cir 1979]; *see also United States v Barrios*, 210 F3d 355 [table; text at 2000 WL 419940, *2, 2000 US App LEXIS 7133, *5-6 (2d Cir, Apr. 18, 2000)], *cert denied* 531 US 870 [2000]; *Hummel v State*, 617 NW2d 561, 564 [Minn 2000]). Finally, for the reasons previously stated, we reject defendant's claims that judicial somnolence is a "mode of proceedings" error requiring a new trial whether or not the defense was prejudiced thereby.

Accordingly, the order of the Supreme Court, New York County (Marcy Kahn, J.), entered on or about December 20, 2001, which, after a hearing, granted defendant's motion, pursuant to CPL 440.10, to vacate the judgment, Supreme Court, New York County (James Leff, J.), rendered January 9, 1995, convicting him, after a jury trial, of murder in the first degree, attempted murder in the first degree, criminal possession of a weapon in the second degree, and criminal sale of marijuana in the first degree, and imposing sentence, should be reversed, on the law, the facts and in the exercise of discretion, the motion denied, and the judgment of conviction reinstated.

BUCKLEY, P.J., ROSENBERGER, LERNER and GONZALEZ, JJ., concur.

Order, Supreme Court, New York County, entered on or about December 20, 2001, reversed, on the law, the facts and in the exercise of discretion, defendant's motion denied, and the judgment of conviction reinstated.