*830 OPINION OF THE COURT
Plummer E. Lott, J.
The defendant, pro se, moves to vacate the judgment on the ground that her attorney was suspended from the practice of law during his representation of the defendant in this case.
In deciding this motion the court has considered the motion papers, the affirmation in opposition and the court file.[1]
Background
On January 3, 2002, an attorney named James L. Hubbert was suspended by the Appellate Division, First Department, from the practice of law for a period of “six months” effective February 1, 2002.[2] The Appellate Division described Mr. Hubbert’s conduct as follows:
“During the sanction phase of the hearing, held on March 26, 2001, the Committee introduced a letter of admonition issued to respondent in 1996. It cited him for neglect that possibly caused his client’s claim to be time barred and noted that, in 1997, respondent had answered a complaint only after being threatened with a suspension motion. On April 25, 2000, respondent was sent a complaint, and on May 4th he was sent another complaint, this time with the warning that because of his conduct in 1997 there would be no extension. Despite that warning, respondent failed to timely respond. In June 2000, a subpoena duces tecum was served on respondent, which he ignored. Finally, on or about August 9, 2000, respondent appeared for his deposition and provided answers to the complaints.
“Respondent’s failure to cooperate unless threatened with suspension continued with two more complaints filed in December 2000 and January 2001. It was later revealed that two other matters were pending against respondent. Respondent does not maintain malpractice insurance and, since January 2000, he has not had a secretary, contracting out secretarial work instead. He also testified that he finds writing letters to clients to be burden *831 some.”[3]
Mr. Hubbert’s suspension was ultimately based on the fact that he neglected two cases, failed to promptly return unearned fees and failed to cooperate with the Disciplinary Committee.[4]
On July 2, 2002, the defendant was found in possession of a gun in her purse. The purse was on the ground next to her.
On July 3, 2002, the defendant was arraigned on a felony complaint in Kings County Criminal Court. At arraignment, the defendant was represented by retained counsel, Mr. Harry Scott.
On August 14, 2002, an indictment was filed charging the defendant with criminal possession of a weapon in the third degree. On September 9, 2002, the defendant was arraigned and pleaded not guilty.
On January 30, 2003, it was discovered that Mr. Scott had been disbarred and was practicing law without a license and was being sought by law enforcement agents for the commission of various crimes. A substitute attorney was then assigned to the defendant.
On March 25, 2003, Mr. James Hubbert filed a notice of appearance on behalf of the defendant. The notice of appearance indicated that Mr. Hubbert was retained counsel.
On July 29, 2003, suppression hearings were conducted. At the conclusion of the hearing, the court found that defendant’s testimony was unworthy of belief and denied suppression. The trial commenced that day.
At trial, the police officer who found the weapon testified to finding the gun in the defendant’s purse. The defendant also testified. On August 4, 2002, within two hours of completion of the charge, the jury returned a guilty verdict.
On September 10, 2003, the court sentenced the defendant as a predicate felon.
On October 9, 2003, the defendant filed a notice of appeal. On October 16, 2003, the defendant filed a second notice of appeal and an application for poor person relief.
By letter dated October 24, 2003, the defendant informed the court that she had discovered that her attorney had been suspended during his representation of her. By letter dated October 30, 2003, the court informed the defendant that the court lacked jurisdiction to entertain her claim and advised her *832 that the proper method was to make a postconviction motion to vacate the judgment on notice to the prosecution.
On November 16, 2003, the Appellate Division denied the defendant’s request for poor person relief and appointment of counsel. The Appellate Division order granted leave to renew “upon proper papers, including the appellant’s affidavit setting forth the amount and source of counsel fees paid to retained counsel.” The Court’s records indicate that no further action has been taken on the appeal.
By motion dated December 10, 2003, the defendant made the instant motion.
On June 10, 2004, Mr. Hubbert was disbarred on the ground that he practiced law while his license was suspended.[5]
[6] The Appellate Division noted that Mr. Hubbert was never reinstated to the practice of law after his suspension because he failed to comply with certain rules of the Appellate Division regarding reinstating suspended attorneys.[6]
Poor Person Relief
The defendant requests that the court assign counsel and grant her poor person relief. The defendant’s affidavit indicates that she is incarcerated and earns a minimum salary. The affidavit does not set forth the nature of any other assets or income that she may have. In this respect, it is noted that the defendant twice retained private counsel and the Appellate Division has denied her application for poor person status.
The court finds that the application is insufficient to establish that the defendant cannot afford an attorney. The application fails to explain how she was able to retain two attorneys, post bail of $2,000, or what interest or control she has in other assets.
The motion for poor person relief and assignment of counsel is denied.
Procedural Bars
CPL 440.30 (4) (b) permits a court to deny a motion to vacate a judgment without a hearing if the moving papers do not *833 contain sworn allegations as to all essential facts.[7] The affidavit must be from a person having actual or personal knowledge of the facts at issue.[8] Conclusory allegations do not constitute sworn allegations of facts, as they are not facts but merely claims.[9]
In conclusory form, the defendant alleges that both the court and the prosecution knew of Mr. Hubbert’s suspension and withheld the facts from her. There is no sworn allegation from any person having knowledge that could establish that the court or the People knew of Mr. Hubbert’s suspension from the practice of law. The allegation is mere speculation.[10] This is especially true since the suspension was not by this court’s Appellate Division or a result of any behavior in the Second Department or Kings County.
The portion of the motion seeking an order vacating the judgment on this ground is denied as being without any factual support.
The People, in opposition to this motion, claim that the defendant “probably” knew that her attorney was suspended from the practice of law during the period that Mr. Hubbert represented her and thus could have placed that fact on the record before sentencing.
CPL 440.10 (3) (a) permits a court to deny a motion to vacate a judgment without a hearing where defendant could have, with due diligence and before sentencing, placed all essential facts on the record.[11]
The court finds that the defendant is not barred under this section. All during the proceeding the defendant was represented by Mr. Hubbert and it would have been incongruous for her to *834 place the fact of Mr. Hubbert’s suspension on the record, if she actually knew about the suspension.
The prosecution’s argument is rejected.
Nonetheless, if it could have been proven that the defendant knew of Mr. Hubbert’s suspension, the court would have been inclined to rule that such knowledge would constitute either a waiver or a forfeiture of the right to counsel.[12] The burden of showing waiver or forfeiture is on the People. The prosecution’s affidavit is pure speculation and conclusory.
Right to Counsel
Both the United States Constitution[13] and the New York State Constitution[14] give a defendant in a criminal proceeding the right to the assistance of counsel. This right includes the right to a licensed attorney at law.[15] Where a defendant is represented by a layperson, who has never been admitted to the bar, the defendant is entitled to have the judgment vacated without any showing of prejudice or a denial of a fair trial.[16]
An attorney whose privilege to practice law is suspended is, nonetheless, a lawyer as contemplated by the Constitution.[17] “The suspension of an attorney reflects a decision that the attorney is not permitted to practice law during the period of suspension, rather than a statement that the attorney is not competent to practice law.”[18] The vast majority of jurisdictions, other than New York, have required a defendant, who seeks reversal based on representation by a suspended lawyer, to es *835 tablish something more than mere representation by a suspended attorney.[19]
There appears to be only one higher New York court decision dealing with the representation of a defendant by a suspended attorney. In People v Kieser,[20] the defendant was represented by an attorney licensed in New Jersey but who had been suspended for nonpayment of bar dues and had not been formally admitted to New York pro hac vice. The Court found that these minor deficiencies were not, in and of themselves, under the circumstances of the case,[21] sufficient to constitute a violation of defendant’s right to counsel. During the discussion of the legal issues, the Court of Appeals observed: “Thus, courts have distinguished between those defects that are ‘technical,’ i.e., those resulting from administrative suspension or censure for failure to comply with State Bar rules which have no bearing on the ‘qualification, competence or moral character of the defendant’s representative’ . . . and those that are ‘serious and substantive.’ ”[22]
The People argue that the above-quoted phrase represents the legal principles applicable in New York. This court does not take the words “courts have distinguished” as affirmatively establishing a legal principle applicable to all cases. The holding of the court was “under the circumstance” of the case. In applying legal principles, it is the holding of the higher court, not its dicta, which binds the lower courts.[23]
The courts outside of New York that have discussed the legal principles have eschewed any fine distinctions between whether the attorney has been suspended due to a substantive (this is *836 the same as a serious and substantive violation) violation or a technical violation of Disciplinary Rules.[24] Foreign jurisdictions adopt a case-by-case analysis.[25] The Court of Appeals’ statement in Kieser that its decision is based on the facts and “under the circumstances here” is an indication that the Court adopts a case-by-case analysis which is consistent with other jurisdictions’ jurisprudence.
Some courts have listed the following factors in considering whether the representation of a defendant by a suspended lawyer violates the Constitution:
“(1) severity of the sanction (suspension versus disbarment; length of suspension), (2) the reasons for the discipline, (3) whether the discipline was based upon an isolated incident or a pattern of conducts,] (4) similarities between the type of proceeding resulting in discipline and the type of proceeding in question, (5) similarities between kinds of conduct resulting in the attorney’s discipline and any duties or responsibilities the attorney had in connection with the proceeding in question[,] (6) temporal proximity between the conduct for which the attorney was disciplined and the proceeding in question, and (7) the nature and extent of the attorney’s professional experience and accomplishments.”[26]
The list is not an exhaustive list. In addition to these factors, the court would add the nature and extent of the trial evidence, whether anything in the trial indicated that counsel’s representation was affected by the suspension, the fact that the conduct of a lawyer who has been suspended should be scrutinized very carefully,[27] and, in New York, the fact that the practice of law by a suspended lawyer is a misdemeanor.[28]
In this case, it is noted that the representation of the defendant by Mr. Hubbert was beyond the six months indicated in *837 the suspension order of January 3, 2002, effective February 1, 2002. Mr. Hubbert first appeared in this case on March 25, 2003. Had Mr. Hubbert taken the time and effort to comply with the Appellate Division’s rules pertaining to reinstatement of suspended attorneys, there is a reasonable possibility that an application for removal of the suspension would have been granted.[29]
The only allegation made in the defendant’s moving papers is that her attorney was suspended. The defendant has not alleged any deficiencies in defense counsel’s performance. There is no discussion in the moving papers of any of the above-noted factors, and no discussion of the trial evidence and how the suspension of the defendant’s lawyer affected the result of the trial.
The motion to vacate the judgment is denied as the papers are legally insufficient to establish the right to reversal of the judgment. Leave is granted to renew the motion in a timely fashion[30] upon proper papers, which include a copy of the trial transcripts,[31] consideration of the listed factors and setting forth particular allegations of errors that counsel may have committed during his representation of the defendant, the method and date by which the defendant first obtained knowledge of Mr. Hubbert’s suspension.

. The court file contains a transcript of the suppression hearing. No transcript of the actual trial is submitted herein.

. Matter of Hubbert, 290 AD2d 122 (2002).

. 290 AD2d at 124-125.

. Matter of Hubbert, 8 AD3d 199 (2004).

. 8 AD3d 199 (2004).

. Rules of the Appellate Division, First Department (22 NYCRR) § 603.13 (0.

. People v Wells, 265 AD2d 589, 589 (1999); People v Lake, 213 AD2d 494, 495-496 (1995); People v Lawson, 191 AD2d 514, 515 (1993); see also People v Satterfield, 66 NY2d 796, 799 (1985); People v Session, 34 NY2d 254, 256 (1974).

. People v Pan, 245 AD2d 149,150 (1997); People v Taylor, 211 AD2d 603, 603 (1995).

. People v Beverly, 5 AD3d 862, 862 (2004); People v Baptiste, 306 AD2d 562, 569 (2003); People v Smith, 251 AD2d 226, 227-228 (1998); People v Folks, 246 AD2d 433, 434 (1998); see People v Smith, 301 AD2d 671, 672 (2003).

. If the court had known of the suspension of Mr. Hubbert’s license to practice law, it would have been obligated under the Canons of Judicial Conduct to inform the proper prosecuting agency and have him arrested.

. People v Friedgood, 58 NY2d 467, 473 (1983); People v Degondea, 3 AD3d 148, 159-161 (2003); People v Blake, 232 AD2d 288, 288 (1996); People v Berezansky, 229 AD2d 768, 771 (1996).

. See People v Kenny, 30 P3d 734, 745-746 (Colo 2000).

. Gideon v Wainwright, 372 US 335 (1963).

. People v Linares, 2 NY3d 507, 510 (2004).

. (People v Felder, 47 NY2d 287, 293 [1979]; Solina v United States, 709 F2d 160 [1983].) It is noted that at the adoption of the Federal Constitution, there did not exist a licensing procedure nor were there many law schools and even fewer graduates. There also did not exist a bar examination nor any formal qualifications for the practice of law (Reese v Peters, 926 F2d 668, 669-670 [1991]; see Annotation, Criminal Defendant’s Representation by Person Not Licensed to Practice Law as Violation of Right to Counsel, 19 ALRSth 351).

. Id.

. People v Pubrat, 451 Mich 589, 594, 548 NW2d 595, 598 (1996); see also Abdallah v Pileggi, 914 F Supp 1115, 1117 (1996) (being on the ineligible list does not affect licensure but, instead, ability to practice); Hill v State, 393 SW2d 901, 904 (Tex 1965).

. Pubrat, 451 Mich at 597, 548 NW2d at 599.

. United States v Mitchell, 216 F3d 1126, 1132-1133 (2000); United States v Maria-Martinez, 143 F3d 914, 916-919 (1998); United States v Mouzin, 785 F2d 682, 698 (1986); Adkins v Alabama, 2004 WL 595417, 2004 Ala Crim. App LEXIS 68 (2004); Commonwealth v Thibeault, 28 Mass App Ct 787, 789-793, 556 NE2d 403, 405-408 (1990); Cantu v State, 930 SW2d 594, 596-603 (Tex 1996); Kenny, 30 P3d at 743-744; Pubrat, 451 Mich at 594-600, 548 NW2d at 597-600; State v Smith, 476 NW2d 511, 513-514 (Minn 1991); Ben-ford v State, 54 SW3d 728, 734-735 (Mo 2001); see also Vance v Lehman, 64 F3d 119, 124 (1995); United States v Ross, 338 F3d 1054 (2003); 19 ALR5th 351; see cases collected in State v Green, 274 NJ Super 15, 28-29, 643 A2d 18, 24-25 (1994); Nguyen, Close, But No Cigar: Courts Shy Away From Announcing a Per Se Ineffective Assistance of Counsel Rule When an Attorney Continues To Practice While Suspended, 2 J Legal Advoc & Prac 113 (2000).

. 79 NY2d 936 (1992).

. 79 NY2d at 938.

. 79 NY2d at 937.

. People v Bethea, 67 NY2d 364, 368 n (1986).

. Maria-Martinez, 143 F3d at 919; Pubrat, 451 Mich at 596-597, 599-600, 548 NW2d at 598-599, 599-600; Cantu, 930 SW2d at 597; Kenny, 30 P3d at 743-744; see also cases in n 20 herein, all involving more than technical violations.

. See list of cases in Kenny, 30 P3d at 743.

. Cantu, 930 SW2d at 602-603; Kenny, 30 P3d at 744.

. Thibeault, 28 Mass App Ct at 793-794, 556 NE2d at 407-408; see United States v Butler, 504 F2d 220, 223-224 (1974) (deficiencies in counsel’s performance, ordinarily attributable to trial strategy, will not be so attributed where attorney is practicing law with a suspended license).

. Judiciary Law § 486; see also 22 NYCRR 603.13 (a), (e).

. See 22 NYCRR 603.14.

. A timely fashion is determined by the efforts the defendant makes in order to comply with this decision. In any new application, the defendant shall set forth the efforts made to comply with this ruling, the dates of those efforts and the reason for any delay.

. To this court’s knowledge, the trial transcript has never been transcribed. It is the defendant’s obligation to supply the court with a copy thereof. In this case, the defendant will have to obtain a copy of the transcript in order to pursue the pending appeal. If the defendant is in fact indigent, an application can be made to the Appellate Division for a free copy of the trial transcript. The defendant’s prior application to the Appellate Division was denied because of improper papers, but the Court granted the defendant leave to renew the application. Of course, an application can also be made to this court for a copy. However, such application would first have to show the possibility of success on a renewed motion as well as inability to afford them.